# United States Court of Appeals for the Federal Circuit

INSULET CORP.,

*Plaintiff-Appellee,*

– v. –

EOFLOW, CO. LTD., EOFLOW, INC., JESSE J. KIM,

*Defendants-Appellants.*

*On Appeal from the United States District Court for the District of Massachusetts in No. 1:23-cv-11780-FDS, Honorable F. Dennis Saylor, Judge*

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

ELIZABETH M. FLANAGAN
COOLEY LLP
30 South 9th Street, 7th Floor
Minneapolis, Minnesota 55402
(312) 881-6383
bflanagan@cooley.com

ELIZABETH B. PRELOGAR
COOLEY LLP
1299 Pennsylvania Avenue
NW Suite 700
Washington, D.C. 20004
(202) 842-7800
eprelogar@cooley.com

LOWELL D. MEAD
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304
(650) 843-5000
lmead@cooley.com

*Counsel for Defendants-Appellants*

OCTOBER 17, 2025

CP COUNSEL PRESS   (800) 4-APPEAL • (383490)

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION .................................................................................1

REPLY ARGUMENT ............................................................................1

    I.      THIS COURT HAS JURISDICTION. ..................................................1

    II.    INSULET'S TRADE SECRET CLAIM WAS TIME-BARRED. ........................................................................................5

        A.     The DTSA Incorporates Inquiry Notice. ...................................6

        B.     Applying Inquiry Notice Compels Reversal. ..........................13

            1.     The denial of summary judgment is reversible on the "undisputed record." ................................................13

            2.     Appellants were prejudiced by the district court's rejection of inquiry notice. ...............................14

            3.     Application of the inquiry notice standard requires reversal. ..............................................16

        C.     "Discovery" Under *Merck* Warrants Reversal. .......................20

    III.   THE DISTRICT COURT ERRED ON "REASONABLE MEASURES." ................................................................................21

    IV.   JUDGMENT IS WARRANTED ON THE ASSERTED DHF TRADE SECRET. ..............................................................................23

    V.    THE DAMAGES AWARD SHOULD BE REVERSED. ..................26

        A.     The Injunction Renders the Avoided-Costs Damages Award Redundant. ...................................................26

        B.     Insufficient Evidence—and No Jury Findings— Supported the District Court's Avoided-Costs Award. ...........29

        C.     Insulet Was Estopped from Seeking Joint and Several Liability. ..................................................................30

CONCLUSION ..................................................................................31

**Page(s)**

**Cases**

*Adcor Indus., Inc. v. Bevcorp, LLC*,
  252 F. App'x 55 (6th Cir. 2007) ...........................................................................9

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  2019 WL 1924992 (N.D. Cal. Apr. 30, 2019) .....................................................10

*Arellano v. McDonough*,
  1 F.4th 1059 (Fed. Cir. 2021) ...........................................................................4, 5

*B&P Littleford, LLC v. Prescott Mach., LLC*,
  2021 WL 3732313 (6th Cir. Aug. 24, 2021) ..................................................18, 19

*BioPoint, Inc. v. Dickhaut*,
  110 F.4th 337 (1st Cir. 2024)..............................................................................30

*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*,
  53 F.4th 368 (6th Cir. 2022) ...............................................................................26

*Chamberlain Grp. v. Skylink Techs., Inc.*,
  381 F.3d 1178 (Fed. Cir. 2004) ...............................................................1, 2, 3, 4

*Ciralsky v. CIA*,
  355 F.3d 661 (D.C. Cir. 2004)...............................................................................3

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*,
  2017 WL 6210920 (N.D. Iowa Dec. 8, 2017) .................................................9, 10

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*,
  920 F.3d 560 (8th Cir. 2019) .......................................... 6, 7, 10, 15, 17, 18, 19

*Dupree v. Younger*,
  598 U.S. 729 (2023)..............................................................................................13

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*,
  980 F.3d 1117 (7th Cir. 2020) .............................................................................28

**Page(s)**

*Epstein v. C.R. Bard, Inc.*,
460 F.3d 183 (1st Cir. 2006)....................................................7, 17, 18

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
857 F. Supp. 2d 997 (S.D. Cal. 2012)................................................11

*George v. McDonough*,
596 U.S. 740 (2022)................................................................12

*Giesecke & Devrient GmbH v. United States*,
2024 WL 3171658 (Fed. Cir. June 26, 2024)....................................3, 4

*Hilton Int'l Co. v. Union de Trabajadores de la Industria
Gastronomica de P.R.*,
833 F.2d 10 (1st Cir. 1987)............................................................2

*Insulet Corp. v. EOFlow, Co.*,
104 F.4th 873 (Fed. Cir. 2024) .......................................................23

*Krauser v BioHorizons, Inc.*,
753 F.3d 1263 (Fed. Cir. 2014) ........................................................3

*Logan v. Burgers Ozark Country Cured Hams Inc.*,
263 F.3d 447 (5th Cir. 2001) ...........................................................3

*Merck & Co., Inc. v. Reynolds*,
559 U.S. 633 (2010)..............................................................8, 9, 20

*Neural Magic, Inc. v. Meta Platforms, Inc.*,
659 F. Supp. 3d 138 (D. Mass. 2023)................................................22

*New Hampshire v. Maine*,
532 U.S. 742 (2001)...................................................................30

*O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*,
955 F.3d 990 (Fed. Cir. 2020) ..........................................................4

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
855 F. App'x 701 (Fed. Cir. 2021) ...................................................23

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Ortiz v. Jordan*,
562 U.S. 180 (2011)......................................................................................14

*Phillip M. Adams & Assocs., LLC v. Dell Comput. Corp.*,
519 F. App'x 998 (Fed. Cir. 2013) .........................................................12, 17

*Phoenix Co. v. Castro-Badillo*,
2024 WL 3742368 (D.P.R. Aug. 9, 2024)...................................................7

*Pie Dev. LLC v. Pie Ins. Holdings, Inc.*,
2023 WL 2707184 (5th Cir. Mar. 30, 2023) ...............................................23

*Porex v. Haldopoulos*,
284 Ga. App. 510 (2007) ........................................................7, 11, 12

*PPG Indus. Inc v. Jiangsu Tie Mao Glass Co.*,
47 F.4th 156 (3d Cir. 2022) ..........................................................29

*RoboticVISIONTech, Inc. v. ABB Inc.*,
726 F. Supp. 3d 364 (D. Del. 2024)...........................................7, 8, 10, 11, 15

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017)........................................................................4

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*,
200 F.3d 358 (5th Cir. 2000) .........................................................19

*SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*,
491 F.3d 350 (8th Cir. 2007) .........................................................23

*Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp.*,
15 F.3d 1427 (7th Cir. 1994) ..........................................................21

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
68 F.4th 792 (2d Cir. 2023) .......................................25, 26, 27, 28, 29

*TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*,
966 F.3d 46 (1st Cir. 2020)..........................................................24

iv

**Page(s)**

*Tomasella v. Nestle USA, Inc.*,
962 F.3d 60 (1st Cir. 2020) ..................................................................27

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*,
342 F.3d 1298 (Fed. Cir. 2003) ............................................................27

*Whiteside Biomechanics, Inc. v. Sofamor Danek Grp.*,
88 F. Supp. 2d 1009 (E.D. Mo. 2000) ..................................................26

*Zirvi v. Flatley*,
838 F. App'x 582 (2d Cir. 2020) ...........................................11, 19, 20

*Zunum Aero, Inc. v. Boeing Co.*,
2025 WL 2364602 (9th Cir. Aug. 14, 2025) ...................................25, 26

**Statutes**

18 U.S.C. § 1836(d) .............................................................................8, 22

**Other Authorities**

21 C.F.R. § 820.30 ...................................................................................25

## INTRODUCTION

Last year, this Court rejected Insulet's arguments on appeal. Perhaps recognizing its contentions are equally flawed this time around, Insulet now contends this Court lacks jurisdiction. That is incorrect because Insulet's asserted patent claims based on 2018 conduct were conclusively resolved when dismissed from this suit, and Insulet cannot reassert those claims. On the merits, Insulet cannot save the judgment. Insulet's DTSA claim is time-barred as a matter of law, consistent with decades of on-point authority. And the judgment is further undermined by fundamental errors of law and an improper damages award. Reversal is warranted.

## REPLY ARGUMENT

## I. THIS COURT HAS JURISDICTION.

This Court has jurisdiction because the district court dismissed Insulet's patent-infringement claims based on 2018 conduct after the statute of limitations expired, and that dismissal therefore operates with prejudice. Blue Br. 57-63. As this Court has explained, "whenever the complaint included a patent claim and the trial court's rulings altered the legal status of the parties with respect to that patent claim, [the Court] retain[s] appellate jurisdiction over all pendent claims." *Chamberlain Grp. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1190 (Fed. Cir. 2004). "Where, as here, all of the patent claims in the amended complaint were dismissed

1

prior to the non-patent ruling on appeal, the dispositive question is whether the dismissal was with or without prejudice." *Id.* at 1189. No matter how the district court designates the dismissal, if it effectively bars the plaintiff from "reasserting the[] claims," then this Court "retain[s] jurisdiction to hear all appeals on all issues." *Id.* at 1190.

Under those principles this Court has jurisdiction—and Insulet fails to show otherwise. Insulet concedes that "the difference between dismissals with and without prejudice . . . is functional, rather than semantic." Red Br. 27-28 (quoting *Chamberlain*, 381 F.3d at 1190). But Insulet ignores that "[t]he Supreme Court has defined . . . 'dismissal without prejudice' as '[a] dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period.'" *Chamberlain*, 381 F.3d at 1190 (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001)). Consistent with that definition, dismissal by a district court, "even though labelled 'without prejudice,' is, in fact, with prejudice if the statute of limitations has run." *Hilton Int'l Co. v. Union de Trabajadores de la Industria Gastronomica de P.R.*, 833 F.2d 10, 11 (1st Cir. 1987); Blue Br. 59-60.

Insulet contends that this well-established rule should not apply to voluntary dismissals. Red Br. 27-29. But *Hilton* expressly says otherwise: "[t]his is clearly the rule if the dismissal is voluntary" and "any other result there would be most unfair." 833 F.2d at 11. And in *Chamberlain*, this Court held that a dismissal of

2

patent claims "subject to stipulation by the parties" and "without prejudice" nevertheless operated to prevent the plaintiff from reasserting those claims and so vested this Court with jurisdiction over a pendant claim. 381 F.3d at 1189-90. Thus, "when a suit is dismissed without prejudice"—whether voluntary or involuntary— "if the statute of limitations has run the dismissal is effectively with prejudice." *Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004) (quotation omitted).

Nor does it matter that the district court ordered dismissal via amendment instead of another procedure. Red Br. 24-26. Jurisdiction turns not on "the specific rule under which the District Court dismissed the claims nor the wording of the dismissal," but instead on the dismissal's effect: does it leave the plaintiff free to reassert the claim in a new suit? *Chamberlain*, 381 F.3d at 1190.

Insulet's cited authority proves the point. In each case, the court analyzed whether a dismissal was without prejudice based on its effect—not based on how it was labeled, whether it was voluntary, or whether it involved formal amendment of the complaint. For example, the Fifth Circuit in *Logan* emphasized the dismissal left the plaintiffs "free to pursue [their] patent infringement claims" in the future. *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 454 (5th Cir. 2001); *see also Krauser v BioHorizons, Inc.*, 753 F.3d 1263, 1269 (Fed. Cir. 2014) (this Court lacked jurisdiction when patent claims were dismissed without prejudice and could be reasserted in the future within limitations period). So too in *Giesecke*

3

and *O.F. Mossberg* the plaintiffs could "refile or reassert the withdrawn claims," and the dismissal was therefore without prejudice because "there [wa]s nothing stopping [the plaintiff] from filing a new action." *Giesecke & Devrient GmbH v. United States*, 2024 WL 3171658, at *3 (Fed. Cir. June 26, 2024) (citing *O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 991, 993 (Fed. Cir. 2020)). Here, in contrast, the time bar prevents Insulet from filing a new action to reassert the same patent claims—and that final resolution of the claims gives this Court jurisdiction.

On the facts, Insulet cannot dispute that the district court dismissed its patent-infringement claims after the statute of limitations ran. Blue Br. 60-62. Citing only an outdated 40-year-old decision (Red Br. 30), Insulet raises the same argument the Supreme Court rejected in *SCA Hygiene*: that "§ 286 of the Patent Act is not a *true* statute of limitations." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 336 (2017). After "the Supreme Court rejected th[at] argument," the law is clear: § 286 "function[s] just as a traditional statute of limitations would to foreclose pressing of stale claims." *Arellano v. McDonough*, 1 F.4th 1059, 1070-71, 1091 (Fed. Cir. 2021) (Chen, J., concurring; Dyk, J., concurring). Thus, Insulet "*is* barred from reasserting these claims" going forward. *Chamberlain*, 381 F.3d at 1190.

Nor can Insulet show that its patent claims survive that six-year time bar. Insulet's sole pleaded basis for patent infringement was an act of importation in

2018.  Blue Br. 57, 61; Appx306-367 (¶¶ 146, 157, 168); Appx1093-1144 (¶¶ 134, 140, 146)).  Infringement based on that act is clearly time-barred.  Insulet now suggests it could pursue *different* patent claims that allegedly arose later.  Red Br. 29.  But it did not assert those claims.[1]  Moreover, even if Insulet had pleaded additional patent claims, that would not alter the jurisdictional calculus because "each individual act of patent infringement gives rise to a discrete claim that starts its own six-year limitations period for seeking a remedy for that act."  *Arellano*, 1 F.4th at 1070-71 (Chen, J., concurring).  The dismissal of Insulet's patent claims based on 2018 importation operates with prejudice, and the conclusive resolution of those 2018 claims alone vests this Court with jurisdiction.

## II.  INSULET'S TRADE SECRET CLAIM WAS TIME-BARRED.

Insulet's DTSA claim was time-barred as a matter of law.  Well over three years before Insulet filed suit—from June 2018 through March 2019 and beyond—

---

[1]  Insulet suggests that its complaint asserted patent infringement based on importation "to facilitate marketing and transfer to Medtronic" in 2022.  Red Br. 29. But the complaint referred to other possible importations in unspecified timeframes only as part of alleging "acts of misappropriation"—not patent infringement. Appx1123-1124 (¶¶ 88-95).  Insulet's boilerplate incorporation-by-reference of the rest of its complaint did not somehow transform these allegations into patent-infringement claims. Red Br. 29-30; Appx1131, Appx1133-1134 (¶¶ 133, 139, 145). And Insulet cites no basis to assert patent infringement related to Medtronic in 2022 because EOPatch has only been sold overseas and Medtronic could not have obtained EOPatch2 in the U.S. market.  Appx21142 (58:1-3, 59:7-13) (testimony that Medtronic acquired "the current version of the EOPatch" "commercially available" in 2022—nowhere suggesting that acquisition occurred in the United States).

Insulet (1) perceived a serious IP problem with the "cloned" EOPatch2; (2) sounded internal alarms that its ex-employees who had access to confidential information were working for EOFlow; (3) alerted attorneys to this issue; and (4) recognized the need to investigate. Blue Br. 6-11. But Insulet did nothing to further investigate misappropriation and instead waited more than five years to sue.

That suit came too late. As the district court recognized—and Insulet fails to refute—every other court to consider the issue has recognized that an inquiry notice standard governs accrual in the trade-secret context. The district court erred in rejecting that standard and refusing to instruct the jury on it. And Insulet cites no factually analogous case where a trade secret claim survived the time bar. Under any standard, the judgment should be reversed.

### A. The DTSA Incorporates Inquiry Notice.

Insulet asks this Court to break from all prior precedent—and create a circuit split—by holding that inquiry notice "conflict[s] with the DTSA's limitations provision." Red Br. 31. This Court should reject that unprecedented interpretation.

As every other court has correctly recognized, the DTSA's limitations period—which expressly borrows term-of-art language from the UTSA and common law governing trade secret misappropriation—incorporates inquiry notice. Under inquiry notice, "the ultimate focus is whether the plaintiff was aware a problem existed." *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 565

6

(8th Cir. 2019). "Once a plaintiff is on inquiry notice, he is charged with knowledge that a reasonably diligent investigation would have disclosed, and has a duty to do such an investigation, regardless of the plaintiff's exact knowledge." *Id.* And as a matter of law, the plaintiff's claim accrues from the moment he is on inquiry notice, unless he actually conducts a diligent investigation and is affirmatively misled from confirming misappropriation—for example, by the defendant's "representations that it has not misappropriated the first party's trade secrets." *See, e.g., RoboticVISIONTech, Inc. v. ABB Inc.*, 726 F. Supp. 3d 364, 370 (D. Del. 2024). Trade secrets case law from courts nationwide—including the First Circuit—embraces these principles. Blue Br. 19-24; *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187-88 (1st Cir. 2006) (plaintiff is "on 'inquiry notice' when the first event occurs that would prompt a reasonable person to inquire into a possible injury," triggering accrual of the claim and affirmative "duty to investigate").[2]

Insulet wrongly asserts that this settled interpretation contravenes the DTSA's text—particularly "the ordinary meaning of the statutory term 'discover[y].'" Red Br. 34. But the DTSA's clock starts not only when misappropriation "is discovered" but also when misappropriation "*by the exercise of reasonable diligence should have*

---

[2] *Epstein* involved a state law claim instead of a DTSA/UTSA claim, but Insulet does not dispute *Epstein* accurately describes "inquiry notice" and is embraced by DTSA/UTSA cases. *E.g., Phoenix Co. v. Castro-Badillo*, 2024 WL 3742368, at *5 (D.P.R. Aug. 9, 2024) (citing *Epstein*); *Porex v. Haldopoulos*, 284 Ga. App. 510, 516 (2007) (same).

been discovered." 18 U.S.C. § 1836(d) (emphasis added).  Inquiry notice establishes when misappropriation should have been discovered as a matter of law—imposing a duty on the plaintiff to exercise reasonable diligence, providing a three-year period to conduct that investigation and file suit, and permitting tolling only when the plaintiff complies with the "duty to conduct a diligent inquiry to allay those suspicions" and is misled about whether misappropriation occurred. *RoboticVISIONTech*, 726 F. Supp. 3d at 370.  The statutory reference to when misappropriation "should have been discovered" based on "reasonable diligence" is the term-of-art language *adopting* inquiry notice—not, as Insulet would have it, a textual barrier to applying that settled accrual rule.

Insulet contends that this uniform interpretation in the trade-secret context is undercut by *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010).  The *Merck* Court rejected inquiry notice in the private securities-fraud context under a statute barring suit more than two years after the plaintiffs "discover[ed] the facts constituting the violation."  *Id.* at 637.  But that statute notably omitted the express term-of-art language in the DTSA, which alternatively keys accrual to when misappropriation should have been discovered through reasonable diligence.  To be sure, *Merck* interpreted the reference to actual discovery of securities fraud to also incorporate "when a hypothetical reasonably diligent plaintiff would have discovered" the violation.  *Id.* at 634.  But the Court had no occasion to consider the distinct context

here, where Congress expressly ran the clock from when misappropriation "should have been discovered" "by the exercise of reasonable diligence" against the backdrop of a settled rule interpreting that language to focus on the actions of the *actual* plaintiff, not a hypothetical one. Notably, Insulet concedes that other courts have refused to extend *Merck* to contexts involving "*different* statutory language," Red Br. 35 n.15—but ignores the different statutory language here.

Insulet further ignores the good reasons Congress had for incorporating inquiry notice for trade secret misappropriation and not securities fraud. "[B]ecause trade secrets are not subject to a filing system, owners' diligence in taking affirmative steps to protect them is crucial." *Adcor Indus., Inc. v. Bevcorp, LLC*, 252 F. App'x 55, 62 (6th Cir. 2007). Inquiry notice thus sensibly "imposes a positive duty of investigation once a party becomes 'aware that a problem exists'" and "[t]he clear intent of the statutes is that a plaintiff placed on notice that another may be utilizing its trade secrets may not sleep on its rights." *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 2017 WL 6210920, at *9 (N.D. Iowa Dec. 8, 2017), *aff'd*, 920 F.3d 560 (8th Cir. 2019). That rule ensures trade secret plaintiffs cannot lie in wait while competitors invest time and millions of dollars. And inquiry notice in this context critically guards against stale claims—a concern not present for securities fraud where Congress instead provided a five-year statute of repose. *Merck*, 559 U.S. at 650 (recognizing that "inclusion in the statute of an unqualified bar on actions

9

instituted" five years after a violation—no matter whether it was or should have been discovered—prevents "stale claims").

Insulet similarly errs in suggesting that the wealth of precedent adopting inquiry notice for trade secret claims does not *actually* apply that standard. Red Br. 36-40. Insulet observes that some DTSA cases use "inquiry notice" to refer to when the plaintiff "by the exercise of reasonable diligence should have discovered" the misappropriation. Red Br. 37 (quotation omitted). But that only shows the inquiry notice rule is grounded in the statute's text, contrary to Insulet's arguments. And Insulet wrongly ignores the rule those cases embrace: as a matter of law, the clock runs from the moment of the inquiry notice itself.

In *CMI Roadbuilding*, for example, the Eighth Circuit held that the DTSA/UTSA clock started running when the plaintiff was on "inquiry notice" that "a possible problem existed." 920 F.3d at 565. At that point—not some later time— the plaintiff "had a duty to investigate" and as matter of law was "charged with knowledge that a reasonably diligent investigation would have disclosed," rendering the claim untimely. *Id.* Similarly, in *Alta Devices*, the DTSA/UTSA clock started once "Alta was on inquiry notice of potential misappropriation" on June 13, 2012— not at a later point following investigation. *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *12-14 (N.D. Cal. Apr. 30, 2019).

The court in *RoboticVISIONTech* likewise held that the clock began running

10

under identical DTSA/UTSA provisions when a former employee failed to return devices containing the plaintiff's trade secrets and joined the plaintiff's competitor, reasoning that those actions "put [the plaintiff] on inquiry notice" of possible misappropriation and triggered "a duty to conduct a diligent inquiry to allay those suspicions." 726 F. Supp. 3d at 370. And the court in *Zirvi* identified proceedings that put the plaintiff "on at least inquiry notice" and triggered the limitations period from that moment—not later. *Zirvi v. Flatley*, 838 F. App'x 582, 586 (2d Cir. 2020). Numerous other DTSA cases—which Insulet simply ignores—likewise run the clock from the moment of inquiry notice. Blue Br. 20-21, 24 (citing *MedCenter*, *P2I*, *Phoenix*, *Compass Marketing*, and *PTP OneClick*).

Contrary to Insulet's assertion (Red Br. 39), UTSA cases adopt the same inquiry notice rule. *Gabriel*, for example, applied the inquiry notice standard under a state UTSA identical to the DTSA to conclude that "a suspicion of wrong doing" had "triggered the statute of limitations." *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1006 (S.D. Cal. 2012). At that point, the plaintiff had a duty to investigate and sue within the limitations period, and the failure to do so precluded suit. *Id.* at 1005-07. Likewise, in *Porex*, the court identified disputed facts about whether sufficient suspicion existed for a UTSA claim "to cause a reasonably prudent person to investigate"—but embraced inquiry notice and the corresponding rule that a plaintiff "must exercise reasonable diligence" upon such notice or face a

time bar. 284 Ga. App. at 516-18. And in *Phillip M. Adams*, this Court concluded that the clock began to run under a state UTSA identical to the DTSA when the plaintiff had notice of "potential theft" of trade secrets, citing precedent establishing accrual when the plaintiff is "put [] on notice to make further inquiry." *Phillip M. Adams & Assocs., LLC v. Dell Comput. Corp.*, 519 F. App'x 998, 1006-07 (Fed. Cir. 2013) (quotation omitted).

Faced with this uniform line of precedent, Insulet retreats to arguing that the DTSA should not be understood to incorporate accrual standards under the UTSA and parallel state-law statutes. But Insulet does not—and cannot—dispute that Congress explicitly borrowed the UTSA's identical limitations provision when enacting the DTSA. Blue Br. 21-22. "'[W]hen Congress employs a term of art,' that usage itself suffices to 'adop[t] the cluster of ideas that were attached to each borrowed word' in the absence of indication to the contrary." *George v. McDonough*, 596 U.S. 740, 746, 753 (2022) (quotation omitted). The DTSA thus incorporates "the old soil" that comes with the UTSA's limitations language, including inquiry notice. *Id.* at 746. The district court erred in becoming the self-described "Numero Uno" court to depart from this stable body of precedent. Appx16632 (27:13-20).

**B. Applying Inquiry Notice Compels Reversal.**

Insulet cannot credibly dispute that under inquiry notice, the DTSA clock started running no later than 2019 after Insulet perceived EOFlow's "cloned" product presented by ex-Insulet employees; informed attorneys of that issue; and internally urged investigation into an IP violation. Blue Br. 6-11, 28-32. Yet although Insulet was put on inquiry notice and obliged to diligently inquire, it did nothing to investigate misappropriation. Blue Br. 32-35. The district court correctly ruled that if inquiry notice applies, Insulet's case was time-barred. Appx46; Appx104.

**1. The denial of summary judgment is reversible on the "undisputed record."**

Insulet wrongly presumes denial of summary judgment is unappealable after trial. Red Br. 49. Not so. The district court denied summary judgment based on a "purely legal" issue—rejecting the inquiry notice standard—that was "not 'supersede[d]' by later developments in the litigation" and therefore "merge[d] into the final judgment," making it "reviewable on appeal." *Dupree v. Younger*, 598 U.S. 729, 735 (2023). At summary judgment, the district court found based on the "undisputed record" that Insulet "plainly had at least a cause for concern that defendants had engaged in prohibited conduct by early 2019," establishing "inquiry notice" as a matter of law. Appx21; Appx15; Blue Br. 14. The court denied summary judgment solely because it rejected the inquiry notice standard. Appx21.

13

Notably, the district court further recognized in denying certification for an interlocutory appeal that "the statute of limitations issue would not need to be re-tried by a jury if the appellate court later determined that inquiry notice" applies. Appx46. In that situation, "defendants would almost certainly be entitled to summary judgment on the trade secret claim" given the undisputed evidence establishing inquiry notice "before the statutory bar date of August 3, 2020." Appx46. The district court's analysis thus leaves no doubt that summary judgment was denied on an interpretation of law, not on "factual issues genuinely in dispute." *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011).

Insulet does not identify any error in the district court's ruling that if inquiry notice applies, summary judgment was appropriate. Appx21. This Court can reverse the judgment on this basis alone—as the district court expressly contemplated. Appx46.

### 2. Appellants were prejudiced by the district court's rejection of inquiry notice.

Insulet contends the jury instructions were somehow "*more* favorable to Defendants" by omitting "inquiry notice," and thus not prejudicial. Red Br. 18, 40-42. That is incorrect.

The key issue is: when does the limitations clock start running? Appellants' proposed instruction correctly followed DTSA/UTSA precedent holding that the clock starts when "inquiry notice" arises. Appx19972. Thus, Appellants asked the

court to instruct that, in determining when Insulet should have discovered misappropriation through the exercise of reasonable diligence, the jury should "apply the concept of 'inquiry notice'" and start the clock "when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant." Appx19972. The district court erred by declining to give that instruction, which followed uniform DTSA/UTSA precedent.

The district court additionally failed to instruct the jury that a plaintiff on inquiry notice has "a duty to investigate" misappropriation. *See CMI Roadbuilding*, 920 F.3d at 565-66. Rather than directing the jury to focus on *Insulet's* actions—its diligence or lack thereof—the district court erroneously instructed the jury to consider "when a hypothetical reasonably diligent company" should have discovered misappropriation. Appx21391 (172:2-3). And the court cautioned that "[m]ere suspicion of misappropriation, or mere concerns, without more, are insufficient" to trigger the limitations period, Appx21391 (172:20-21)—contradicting precedent establishing that a plaintiff on inquiry notice has a "duty to conduct a diligent inquiry to allay those suspicions," *RoboticVISIONTech*, 726 F. Supp. 3d at 370. The jury accordingly was never properly instructed to consider whether Insulet should have inquired into possible injury after perceiving its ex-employees' "cloned" product and internally urging investigation into an IP violation.

Insulet mischaracterizes the record in suggesting the district court nevertheless adopted a looser accrual rule than inquiry notice. Insulet notes that, at what it calls "Step 1," the district court instructed that a defendant asserting a limitations defense must "first prove that the lawsuit was filed more than three years after the misappropriation occurred." Appx21392 (173:21-25). But that instruction did not address the relevant question: where, as here, misappropriation occurs more than three years before suit, when does the limitations period start running? On that issue—what Insulet calls "Step 2"—the district court erred by declining to instruct that the clock begins "when the first event occurs that would prompt a reasonable person to inquire into a possible injury." Appx19972. It does not matter that "the court shifted the burden" to Insulet, Red Br. 41, because the jury was not properly instructed on what Insulet needed to show to carry that burden: that it lacked inquiry notice.

### 3. Application of the inquiry notice standard requires reversal.

As the district court twice recognized, the refusal to apply "inquiry notice" was case-dispositive. Appx46; Appx104. On the undisputed record, Insulet perceived a potential IP injury more than four years before filing suit. Blue Br. 6-11. In 2018-2019, Insulet saw key ex-employees who had access to alleged trade secrets presenting an Omnipod "clone" that would be Omnipod's first and only competing product after the world's largest companies had tried and failed to

produce such a product. *Id.* at 4, 8-11. EOFlow's posters—visible to Insulet in 2018-2019—specifically advertised EOPatch2's "Soft Cannula" with Omnipod-like "nailhead" design and "Occlusion Detection":



*Id.* at 6-7, 10-11. And Insulet understood the EOPatch2 product was designed by the same ex-employee, DiIanni, who had designed Omnipod using CAD files. Appx20611 (71:17-72:1); Blue Br. 4, 8-9. In response, Insulet consulted "legal"; urged investigation into an IP violation; and implored that "someone should request samples." Blue Br. 8-10. These facts demonstrate that Insulet was on inquiry notice.

Insulet now asserts that it suspected only patent infringement and not trade secret misappropriation. Red Br. 49-50. But Insulet's cited internal emails were not focused on patents. Appx43523-43525; Appx54332; Appx55152-55153; *see* Appx20598 (20:10-12) (testimony that patent infringement did not "cross Insulet's mind"). Instead, the emails show concern about ex-employees using unspecified Insulet IP to create a cloned product—precisely the circumstances that trigger inquiry notice. *Epstein*, 460 F.3d at 187; *CMI Roadbuilding*, 920 F.3d at 565; *Phillip M. Adams*, 519 F. App'x at 1007.

Because Insulet was on inquiry notice of possible misappropriation, it was required to diligently investigate "the problem and its cause." *CMI Roadbuilding*, 920 F.3d at 565 (quotation omitted); *Epstein*, 460 F.3d at 187 ("inquire into a possible injury"). But Insulet did nothing to investigate for years running. Blue Br. 10, 32-33. Insulet provided no reminder of confidentiality to its ex-employees, sent no correspondence to them or EOFlow, never requested samples, never internally investigated misappropriation—nothing. While Insulet notes it passively kept "tabs" on "competitors" generally (Red Br. 9, 46), its expert admitted that it merely performed routine "marketing work" and did "not investigate[] to discover a potential misappropriation." Appx21327-21328 (64:10-65:25). Courts universally hold trade secret claims time-barred on similar (and less compelling) facts.

Insulet cites no case where a trade secret claim survived the time bar on facts reflecting this level of notice, alarm, and inaction. Indeed, the one case it cites where a plaintiff avoided the time bar only highlights Insulet's own failure of diligence. *See* Red Br. 47. In *B&P*, once the trade secret owner perceived a potential IP problem, it diligently "attempted to unearth evidence of misappropriation," including asking vendors for information and submitting complaints to the FBI. *B&P Littleford, LLC v. Prescott Mach., LLC*, 2021 WL 3732313, at *6-7 (6th Cir. Aug. 24, 2021). The plaintiff "was stymied by a lack of documentation and its vendors' responses"—as well as the FBI's inaction—but it had "satisfied its

18

obligation of conducting a reasonable investigation." *Id.* Here, in stark contrast, Insulet did nothing to investigate the perceived IP problem.

Nor can Insulet avoid judgment by belatedly asserting fraudulent concealment—a claim Insulet never pleaded, let alone proved, under the requisite standard of heightened particularity. *Zirvi*, 838 F. App'x at 585. Insulet waived this claim for good reason: its current assertions of concealment misstate the record. For example:

- EOFlow extensively described EOPatch2—not EOPatch1—in trade shows (including transparent samples), EOFlow's Prospectus, and business discussions (including a demonstration to Insulet), and shared EOPatch2 samples and details with other companies, never misrepresenting EOPatch2's features. Blue Br. 6-12, 33-34; Appx20829-20830 (186:16-187:11) (Malave demonstrated transparent EOPatch2 to Insulet).

- Insulet mischaracterizes discussions where EOFlow declined to divulge "corporate plans"—not technical information. Appx41453; Appx41605.

- EOPatch2 sample cannulas were clipped only for "safety" to prevent needles pricking fingers. Appx20780 (137:7-10). EOFlow's posters and Prospectus showed EOPatch2's "Soft Cannula" with Omnipod-like "nailhead" design, never concealing that feature. Blue Br. 7, 12.

More fundamentally, Insulet cannot tenably argue that "it could not have discovered that its trade secrets were being misappropriated" when it ignored its "duty to investigate." *CMI Roadbuilding*, 920 F.3d at 565-66; *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 366-67 (5th Cir. 2000) (under UTSA, rejecting plaintiff's argument that "it could not have been aware of a possible cause of action" due to "concealment" because plaintiff "failed to exercise reasonable diligence");

19

*Zirvi*, 838 F. App'x at 587 (rejecting "concealment" argument when plaintiff "failed to exercise due diligence").  No case endorses Insulet's position that a trade secret owner can perceive an IP violation and do nothing to investigate for four-plus years, yet save its claim after the fact by speculating that inquiry would have been futile. Blue Br. 34.

Insulet's final claim is that the limitations period could not run on the "DHF trade secret" because it was not "stolen until January 2021."  Red Br. 44.  But a substantial portion of the "DHF" was allegedly misappropriated by late 2018, including the CAD files and soft cannula, occlusion detection, and other "design history file" documentation.  Appx21065 (23:6-24:5); Blue Br. 31.  Insulet itself successfully argued that it could establish misappropriation of only a "substantial portion" of the DHF.  *Cf.* Red Br. 67-69.  It cannot now escape the time bar given that it was on inquiry notice of misappropriation well over three years before it sued.

C.    **"Discovery" Under *Merck* Warrants Reversal.**

Even if this Court were to reject the inquiry notice standard and extend *Merck* to the trade-secret context, JMOL remains appropriate.  Blue Br. 35-36.  Insulet accepts the meaning of "discovery" under *Merck*:  sufficient information to state a claim.  Blue Br. 35; Red Br. 53.  By early 2019, Insulet knew that (1) ex-employees with access to Insulet's trade secrets were working for EOFlow, including DiIanni who created the Omnipod CAD files, and (2) EOFlow was developing the "cloned"

EOPatch2 bearing a "stunning resemblance" to Omnipod, including with design features incorporating the asserted trade secrets, such as the prominently-advertised soft cannula and occlusion detection. Blue Br. 6-11, 28-30, 35-36. Moreover, as Insulet proclaims, "[n]o other company ha[d] succeeded in (lawfully) designing a competitive patch-pump—even though the largest medical-device companies have invested heavily in trying." Red Br. 5.

This classic pattern of access-plus-similarity suffices to sue. Blue Br. 28-29; *Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp.*, 15 F.3d 1427, 1432 (7th Cir. 1994) (holding that because "(1) DSC had access to Sokol's trade secrets, and (2) DSC's product was similar to Sokol's," it was "entirely reasonable . . . to infer that DSC used Sokol's trade secret"). Insulet cites no case where access-plus-similarity was *not* sufficient to assert misappropriation. Red Br. 50-51, 53-54. And indeed, these very allegations—access, similarity, and "[m]any other companies . . . have tried, but failed"—in fact *were* the basis of Insulet's eventual August 2023 complaint. Blue Br. 4, 36; Appx308-309, Appx321-323 (¶¶ 6-8, 40-42). But Insulet waited too long to assert those allegations—and no reasonable jury could find otherwise.

## III. THE DISTRICT COURT ERRED ON "REASONABLE MEASURES."

Contrary to Insulet's assertion, the DTSA does not limit "reasonable measures" to measures "when misappropriation occurred." Red Br. 56. While

liability commences when a trade secret is first misappropriated, the DTSA expressly contemplates "continuing misappropriation." 18 U.S.C. § 1836(d). And "courts have recognized that actions taken after the alleged misappropriation are relevant to whether information can be properly categorized as a trade secret and whether it was ever valued to begin with." *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 177-78 (D. Mass. 2023). Indeed, the DTSA—in contrast to some state laws—notably omits an explicit temporal limitation defining trade secrets by reference to whether reasonable measures existed at the time of misappropriation. *Id.* at 177.

The district court erred in nevertheless instructing the jury that "whether Insulet took 'reasonable measures' to keep the information secret should be evaluated as of the time of the alleged misappropriation." Appx21389 (161:9-13). While the court told jurors they could consider post-appropriation evidence, it made clear that such evidence must bear on the reasonableness of "the measures [Insulet] took *at the relevant time*," Appx21389 (161:11-12) (emphasis added)—a temporal limit the statute does not contain.

The erroneous instructions were prejudicial. After seeing its ex-employees present EOFlow's "cloned" product and raising the alarm, Insulet did nothing for years to protect against continuing misappropriation. Blue Br. 6-10. Courts have recognized that such a delay after perceiving the misappropriating competitor can be

22

one fact negating "reasonable measures." *Pie Dev. LLC v. Pie Ins. Holdings, Inc.*, 2023 WL 2707184, at \*2-3 (5th Cir. Mar. 30, 2023). Insulet thus failed to take "reasonable measures" as a matter of law—further requiring reversal.

## IV. JUDGMENT IS WARRANTED ON THE ASSERTED DHF TRADE SECRET.

Insulet bore the burden of proving the existence and scope of its alleged trade secrets. *Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701, 705 (Fed. Cir. 2021). Its failure to identify the DHF beyond the "hazy grouping of information" this Court already found deficient, *Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873, 881 (Fed. Cir. 2024), dooms the asserted "DHF" trade secret.

This Court previously rejected Insulet's attempt to assert as a trade secret essentially all Insulet confidential information—including all "design drawings and specifications"—as "severely overbroad." *Id.* Insulet responded with an even broader all-encompassing "compilation" trade secret: the new "DHF" trade secret reflecting "the entirety of Insulet's work on the Omnipod"—"all accumulated knowledge" and "[]all research and development." Appx6361-6387 (¶¶ 32, 58, 94(b)); Appx21027 (45:19-22). But as this Court has recognized, "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." *Olaplex*, 855 F. App'x at 713. Insulet was required to "delineat[e] with some particularity" the combination of information asserted as a trade secret. *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 491 F.3d 350, 354

(8th Cir. 2007); *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 54 (1st Cir. 2020) (same).

Insulet argues it met this particularity threshold in two ways, but neither is supported by the record. Red Br. 58-60. ***First***, Insulet mischaracterizes the testimony of Julie Perkins, claiming she "took the jury through the carefully organized content and structure of the DHF," purportedly reflected in Exhibit 2177. Red Br. 58-59. Perkins merely "flipped" through Exhibit 2177 and spent only 20 minutes at trial taking the jury through an attorney-compiled *excerpt.* Appx21010 (173:19-174:4); Appx21024 (36:1-8); Appx21009-21012 (170:22-184:13); Appx21022 (25:11-28:15); Red Br. 58 (citing same testimony). Her testimony on one such category ("assembly drawings"), for example, was limited to the following:

> **Q**. What are the assembly drawings in the design history file?
>
> **A**. So it's essentially the 2D drawing of the more than one component being compiled. . . .
>
> **Q**. Does this design history file have all the assembly drawings that would be in the Omnipod Eros DHF?
>
> **A**. I didn't go through every single drawing and see if they were there, but there was a lot of them in there.

Appx21011-21012 (180:19-181:2). Her testimony on other categories was similarly high-level. *See, e.g.*, Appx21009-21012 (170:22-184:13); Appx21022 (25:11-28:15).

No other Insulet witness "fleshed out" (Red Br. 59) Perkins's scant testimony.

24

Insulet relies on evidence about a mere handful of documents—nothing approaching the hundreds or thousands supposedly constituting the DHF. Appx20523 (77:8-80:20) (two documents); Appx20545 (167:1-168:8) (one); Appx20557 (12:3-23) (one); Appx21070-21073 (44:25-53:1) (four); Appx21099 (159:18-22) (one); Appx21102-21105 (169:4-172:9, 173:21-177:15, 182:7-183:4) (three); Red Br. 59 & n.23 (citing same testimony).

*Second*, Insulet's reliance on testimony about design history files generally (Red Br. 59-60) sheds no light on the asserted DHF ***trade secret***—a litigation construct that was admittedly over- and underinclusive of Insulet's real-world DHF. *Contrast, e.g.*, Appx21022 (26:5-11) (identifying "standard operating procedures" ("SOPs") as one component of the DHF trade secret), *with* Appx21024 (36:14-23) *and* Appx20578 (96:20-23) (multiple Insulet witnesses conceding SOPs are not part of the real-world DHF); *see also, e.g.*, Appx21010 (174:8-175:12) (Perkins testifying Exhibit 2177 excludes components of real-world DHF, *e.g.*, "test protocols"). Nor does Insulet cite any evidence suggesting the asserted trade secret hewed to the DHF regulatory definition. *Contrast* Red Br. 59-60, *with* 21 C.F.R. § 820.30 (referencing components like "approved design plan[s]" and "design validation[s]" that appear nowhere in the trade secret definition).

Insulet's repeated advancing of a "hazy grouping of information" in the all-encompassing "DHF" trade secret distinguishes this case from *Zunum* and *Syntel*,

which involved discrete, enumerated trade secrets. *Zunum Aero, Inc. v. Boeing Co.*, 2025 WL 2364602, at *1 (9th Cir. Aug. 14, 2025) (each trade secret identified by number, described, and illustrated with "exhibits and demonstratives"); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 68 F.4th 792, 801 (2d Cir.) (each trade secret identified by name, described separately, and linked to "specific exhibits"), *cert. denied*, 144 S. Ct. 352 (2023); Red Br. 60-61. *Caudill* is likewise unhelpful to Insulet. There, the plaintiff spent "almost 100 pages of testimony" describing the misappropriated "research-and-development process," explaining in detail the "collection of [underlying] articles," manufacturing documents, and specific testing that occurred. *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 376, 381-82 (6th Cir. 2022). The record here contains no such details—providing yet another basis for reversal.

## V.     THE DAMAGES AWARD SHOULD BE REVERSED.

Even if the Court affirms judgment on liability, it should reverse the unsupported damages award.

### A.     The Injunction Renders the Avoided-Costs Damages Award Redundant.

Insulet concedes the law prohibits pairing forward-looking monetary damages with injunctive relief. *Whiteside Biomechanics, Inc. v. Sofamor Danek Grp.*, 88 F. Supp. 2d 1009, 1020 (E.D. Mo. 2000), *aff'd sub nom.*, *Whiteside Biomechanics, Inc. v. Danek Med., Inc.*, 13 F. App'x 950 (Fed. Cir. 2001). Nor does Insulet dispute that

26

its damages theory was dominated by forward-looking damages, leading the district court to significantly reduce the award when imposing its injunction. That court erred, however, by leaving intact $25.8 million in compensatory damages purporting to represent EOFlow's avoided R&D costs. Appx97. That award is incompatible with the injunction preventing EOFlow from realizing any benefits from those avoided costs.

Avoided costs are a form of unjust enrichment damages under the DTSA that are intended to "make trade secret holders whole" when other means of calculating damages do not fully account for their "actual loss—*i.e.*, in instances where the value of the secret is damaged, or worse yet—destroyed." *Syntel*, 68 F.4th at 809 (quotation omitted). Generally, unjust enrichment damages are appropriate where a defendant benefits at a plaintiff's expense and allowing the defendant to retain that benefit would be unjust. *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1309 (Fed. Cir. 2003); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020).

In the trade-secret context, unjust enrichment damages prevent a party who misappropriates trade secrets from ending up better off from the misappropriation while the trade secret holder ends up worse off. Both justifications are absent here. EOFlow is not better off because it never earned profits from sales of EOPatch2 and received no money from the canceled sale to Medtronic. Appx21183 (27:1-10);

27

Appx20778 (135:10-21). The company now faces a permanent injunction that terminates EOFlow's access to Insulet's claimed trade secrets, prevents future sales of any product incorporating the trade secrets, and discourages outside investment. Appx110.

Insulet, for its part, is not worse off. It observes that avoided-costs damages may be appropriate where the defendant uses a trade secret to develop its own product, "thereby diminishing the value of the trade secret to the claimant." Red Br. 74 (citing *Syntel*, 68 F.4th at 812). But Insulet ignores that, as in *Syntel*, it offered "no proof that [the defendant's] misappropriation diminished the value of [plaintiff's] trade secrets to any degree." 68 F.4th at 812. Instead, Insulet's trade secrets are as "valuable and secret" as ever, especially with the injunction imposed on EOFlow. *Id.* Under these circumstances, requiring EOFlow to pay Insulet an additional $26 million "produce[s] an unjust windfall" and renders the avoided-costs award "more punitive than compensatory"—a "distortion of the DTSA's remedial scheme." *Id.* at 811.

Insulet's two cited cases do not justify a different conclusion. Red Br. 72-73. One includes no discussion of double recovery and potential overlap between damages and injunctive relief. *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1127 (7th Cir. 2020). The other begins and ends its consideration of this question with the simplistic analysis that injunctions and avoided-costs damages

28

cover different time periods. *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 163-64 (3d Cir. 2022).

The careful analysis in *Syntel* is far more instructive. 68 F.4th at 811-12. The Second Circuit there recognized that avoided-costs damages were unavailable where an injunction eliminated the defendants' "ability to profit from any avoided costs" and where the plaintiff "suffered no compensable harm supporting an unjust enrichment award." *Id.* at 811. That same logic bars the avoided-costs award here: because the broad permanent injunction deprives EOFlow of any benefit from misappropriation and fully redresses any harm to Insulet, the avoided-costs award is unsupported, duplicative, and improper.

**B.     Insufficient Evidence—and No Jury Findings—Supported the District Court's Avoided-Costs Award.**

The damages award also requires reversal because it rests on speculation, not evidence. Blue Br. 53-54. The record does not support Insulet's claim that engineer McLaughlin used a rigorous process to estimate R&D efforts. Red Br. 75-56. These estimates were far more speculative than others McLaughlin had done (Appx20575 (82:18-84:9)), had little documentary support (Appx20574-20575 (80:7-81:21)), and were presented in a conclusory manner with minimal explanation (Appx20561 (26:3-28:9)).

Insulet cites the general proposition that witness credibility is for the jury. Red Br. 76. But the problem here is the lack of reasonable certainty. Accepting

McLaughlin's *own account* of how he estimated long-ago R&D work, his speculative guesswork lacked a sufficient factual and evidentiary basis. And that uncertainty was compounded when the district court attempted to isolate avoided costs without a special verdict form requiring findings on that issue. Blue Br. 54.

### C.    Insulet Was Estopped from Seeking Joint and Several Liability.

After arguing that EOFlow "got the benefit" from the alleged misappropriation so "should be the defendant that pays the damages," and assuring the jury that imposing $1 in damages for the individual defendants would avoid bankrupting them (Appx21362 (55:19-56:12)), Insulet reversed course and urged the district court to impose joint and several liability on Jesse Kim, saddling him with potentially disastrous eight-figure liability. Insulet erroneously argues that judicial estoppel applies only when a party argues the literal, word-for-word opposite of what it argued before. Red Br. 77. That is incorrect: any "contradictory argument" suffices. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Insulet's overly narrow interpretation of judicial estoppel finds no support in precedent and would create a loophole swallowing the rule.

Joint and several liability is also inappropriate given the lack of evidence that Jesse Kim individually obtained any benefit. Even a high-ranking employee should not be held jointly and severally liable without a finding that "the employee benefitted from the scheme." *BioPoint, Inc. v. Dickhaut*, 110 F.4th 337, 353 (1st

Cir. 2024).  Here, Insulet argued that Mr. Kim "*stood to earn*" money from the Medtronic deal, but that deal was canceled, and no benefit was shown.  Blue Br. 56.

## **CONCLUSION**

The Court should reverse the district court's judgment and permanent injunction.

Dated:   October 17, 2025

COOLEY LLP

*/s/ Elizabeth B. Prelogar*
ELIZABETH B. PRELOGAR
1299 Pennsylvania Avenue
NW Suite 700
Washington, D.C. 20004
(202) 842-7800
eprelogar@cooley.com

LOWELL D. MEAD
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000
lmead@cooley.com

ELIZABETH M. FLANAGAN
30 South 9th Street, 7th Floor
Minneapolis, MN 55402
(312) 881-6383
bflanagan@cooley.com

*Counsel for Defendants-Appellants*
*EOFlow Co., Ltd.; EOFlow, Inc.; and*
*Jesse J. Kim*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 25-1807

**Short Case Caption:** Insulet Corp. v. Eoflow, Co. Ltd., et al.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __6994__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __10/17/2025__

Signature: /s/ Elizabeth B. Prelogar

Name: Elizabeth B. Prelogar