

William M. Jay
+1 202 346 4190
WJay@goodwinlaw.com

Goodwin Procter LLP
1900 N Street, NW
Washington, DC  20036

goodwinlaw.com
+1 202 346 4000

January 5, 2026

**VIA ECF**

Jarrett B. Perlow
Clerk of Court
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

Re:  *Insulet Corp. v. EOFlow Co., Ltd.*, No. 25-1807 (argued Jan. 5, 2026)

Dear Mr. Perlow

At oral argument today the Court asked for record citations from which a reasonable jury could conclude, specifically with respect to the CAD files and the design and manufacturing process for the soft cannula, that the statute of limitations did not start running on an "access and similarity" theory before August 2020.  I responded with respect to the design and manufacturing process for the soft cannula, but did not have a page number for the CAD files.  (I referred the Court to the citations collected in footnote 2 of Insulet's red brief.)

The jury saw a 3D demonstration of Exhibit 2161, a CAD file for the full Omnipod assembly. Appx20517(55:1-16); *see* Appx21387(155:17-18) (jury instruction identifying this same file).  A 2D printout of that file (Exhibit 312-1) appears at Appx40547-41435.  That file contains thousands of precise nominal dimensions (*e.g.*, angles on a curve measured to the hundredth of a degree).  Appx20518(58:21-59:17); Appx21035(78:22-79:8, 80:23-25).  It is valuable not just for the individual dimensions but for the overall ability to model the interactions between parts and because it shows Insulet's design intent. Appx21066-21067(28:11-29:14).

No witness testified that viewing (without disassembling) a sample EOPatch would inform a reasonably diligent observer that Defendants had misappropriated the CAD file, that the EOPatch's parts had similar nominal dimensions to the Omnipod's, or that EOFlow had access to the CAD file.  EOFlow's brief (at 36) cites no testimony to that effect; it cites only the Complaint, filed after "a detailed examination of the EOPatch."  Appx332.  And a reasonable jury could certainly conclude that the limitations period did not start then:  even Mr. DiIanni, who claimed to know the Omnipod's entire design, stated in reference to the CAD file that "the dimensions actually have to physically be measured."  Asked a follow-up—"So they're not in your head. They have to be physically measured?"—he responded, "The numbers have to --



Jarrett B. Perlow
January 5, 2026
Page 2

obviously, on most components, you still need to do the measurements along with looking at it." Trial Tr. Day 5, ECF No. 843, at 183:5-10.  The jury also saw the samples for itself.  Appx20781(138:12-15).

Respectfully submitted,

/s/ *William M. Jay*
William M. Jay

cc:  All counsel of record (via ECF)