**No. 2025-1807**

# United States Court of Appeals for the Federal Circuit

INSULET CORPORATION,
*Plaintiff-Appellee,*

*v.*

EOFLOW CO., LTD.; EOFLOW, INC.; JESSE J. KIM,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Massachusetts, No. 1:23-cv-11780-FDS
Hon. F. Dennis Saylor, IV

## APPELLANTS' RESPONSE TO PETITION FOR REHEARING EN BANC

LOWELL D. MEAD
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000
lmead@cooley.com

ELIZABETH M. FLANAGAN
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
(312) 881-6383
bflanagan@cooley.com

ELIZABETH B. PRELOGAR
COOLEY LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004
(202) 842-7800
eprelogar@cooley.com

*Counsel for Defendants-Appellants EOFlow, Co., Ltd., EOFlow, Inc., and Jesse J. Kim*

## CERTIFICATE OF INTEREST

Counsel for Defendants-Appellants, Elizabeth B. Prelogar, certifies the following:

**1. Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

EOFlow Co., Ltd.; EOFlow, Inc.; Jesse J. Kim (a/k/a Jae Jin Kim)

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

Not applicable.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. Fed. Cir. R. 47.4(a)(3).

EOFlow Co., Ltd.

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Cooley LLP: Michael Sheetz, John C. Bostic, Alexandra Mayhugh, Matthew Oliver, Dustin Knight, Jordan Landers, HanByul Chang, Kimberly A. Scimeca, Reuben H. Chen, Zachary Sisko, Kyung Taeck Minn, Isabel McGrath, John Wray.

Quinn Emanuel Urquhart & Sullivan: Patrick Daniel Curran; Nathaniel Andrew Hamstra; Stacylyn May Doore; William D.

Weinreb; Bae, Kim & Lee LLC: Samuel Sun Mok Lee; Kijoong Kang; Hankil Kang.

5. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5).

*Insulet Corp. v. EOFlow, Co., Ltd.*, 104 F.4th 873, No. 24-1137 (Fed. Cir. June 17, 2024) (Lourie, Prost, Stark, JJ.); *Insulet Corp. v. EOFlow Co., Ltd.*, No. 25-1807 (Fed. Cir.) (Dyk, Prost, Reyna, JJ.); *Insulet Corp. v. EOFlow Co., Ltd.*, Nos. 25-1497, 25-1507 (1st Cir.).

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not applicable.

Dated: September 15, 2026

*/s/ Elizabeth B. Prelogar*
Elizabeth B. Prelogar

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
STATEMENT .......... 2
I. Factual Background .......... 2
II. Procedural History .......... 4
III. The Panel Opinion .......... 5
ARGUMENT .......... 7
I. The Panel's Unanimous Jurisdictional Ruling Does Not Warrant En Banc Review. .......... 7
II. The Panel's Determination that Insulet's Closely Related Trade Secrets Accrued Together Merits No Further Review .......... 11
III. The Inevitable Disclosure Doctrine Is Irrelevant Here .......... 16
CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arrivia Inc. v. Rowley*,
2023 WL 7386384 (D. Ariz. Nov. 8, 2023) ........................................ 12

*B&P Littleford, LLC v. Prescott Machinery, LLC*,
2021 WL 3732313 (6th Cir. 2021) ........................................ 14, 15

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
381 F.3d 1178 (Fed. Cir. 2004) ........................................ 7, 8, 9

*City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*,
637 F.3d 169 (2d Cir. 2011) ........................................ 16

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
345 F. Supp. 3d 1207 (E.D. Cal. 2018) ........................................ 12

*Hilton Int'l Co. v. Union De Trabajadores De La Industria Gastronomica De Puerto Rico*,
833 F.2d 10 (1st Cir. 1987) ........................................ 8

*HiRel Connectors, Inc. v. United States*,
465 F. Supp. 2d 984 (C.D. Cal. 2005) ........................................ 15

*Insulet Corp. v. EOFlow, Co.*,
104 F.4th 873 (Fed. Cir. 2024) ........................................ 4

*Krauser v. BioHorizons, Inc.*,
753 F.3d 1263 (Fed. Cir. 2014) ........................................ 9

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
285 F.3d 1353 (Fed. Cir. 2002) ........................................ 18, 19

*Logan v. Burgers Ozark Country Cured Hams Inc.*,
263 F.3d 447 (5th Cir. 2001) ........................................ 9, 10

*Maatuk v. Emerson Electric, Inc.*,
781 F. App'x 1002 (Fed. Cir. 2019) ........................................ 13

*Oakwood Laboratories, Inc. v. Thanoo*,
999 F.3d 892 (3d Cir. 2021) .......... 18

*PepsiCo, Inc. v. Redmond*,
54 F.3d 1262 (7th Cir. 1995) .......... 19, 20

*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) .......... 9

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017) .......... 10

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*,
200 F.3d 358 (5th Cir. 2000) .......... 18

**Statutes**

18 U.S.C.
§ 1836(b)(3)(A)(i)(I) .......... 19, 20
§ 1836(d) .......... 12
§ 1839(5) .......... 13

28 U.S.C. § 1295(a)(1) .......... 7

35 U.S.C. § 286 .......... 10

## INTRODUCTION

According to Insulet, the panel created no fewer than three circuit splits, defying precedent and revolutionizing the rules regarding everything from this Court's jurisdiction to the accrual of trade secret claims. These bold claims do not withstand scrutiny. The panel applied settled legal principles when it extensively analyzed the facts of this case, which confirmed that Insulet waited far too long to sue.

While Insulet seeks to frame its challenge to the panel's opinion in terms of legal principles, its real criticism is about a handful of in-the-weeds record-based determinations based on the particular facts of this case—specifically, whether the dismissal of Insulet's patent claims functioned as one with prejudice, whether the asserted trade secrets were sufficiently related to support a single misappropriation claim, and the extent to which evidence about a former Insulet employee supported a finding of misappropriation. The panel resolved those factbound issues correctly. But more to the point here: they are simply not questions of law with any broad significance, and they do not warrant en banc review. The petition should be denied.

# STATEMENT

## I. Factual Background

EOFlow and Insulet are both medical device manufacturers that produce insulin pump patches. Insulet debuted the first Omnipod patch pump in 2005 and released new versions in the years after. Op. 3. EOFlow never marketed its first-generation pump patch, the EOPatch®, and it began developing the EOPatch2 in 2017. *Id.*

For years preceding the launch of the EOPatch2, EOFlow hired several former Insulet employees with extensive, proprietary knowledge of the Omnipod's mechanics and design. Op. 3. Among them was Steven DiIanni, a high-level engineer who designed the Omnipod and knew the "details of every aspect of the research and development efforts" for the Omnipod. *Id.* (citations omitted). In early 2018, DiIanni allegedly shared proprietary information about the Omnipod with EOFlow, which EOFlow allegedly incorporated into the EOPatch2. *Id.* at 3-4.

Beginning in 2018—far more than three years before this case was brought—Insulet repeatedly encountered the EOPatch2 and raised concerns about EOFlow's use of its intellectual property. At a 2018 conference of the American Diabetes Association, for example, Insulet attendees took a photograph of the EOFlow booth, which displayed

EOPatch2 samples revealing the product's internal components and promoted it with a poster depicting the soft cannula and touting rapid occlusion detection. Op. 22. Insulet employees immediately registered alarm at the similarity of the devices, stating "EOFlow has cloned our product," advising that "[s]omeone should request samples," and visiting EOFlow's website twenty times in the ensuing days. *Id.* at 22-23 (citation omitted). At additional conferences, Insulet again visited EOFlow booths and photographed EOFlow's displays, including EOPatch2 prototypes. *Id.* at 22-24.

Throughout this period, Insulet's employees were "paying consistent attention" to EOFlow. They explained that EOFlow's product "bore a stunning resemblance" to the Omnipod, Op. 23-24 (citation omitted), and emphasized that "[t]he people running EOFlow . . . [were] past Insulet folks," *id.* at 21 (citation omitted). Even in 2018, Insulet's "legal team [was] aware of this." *Id.* at 22 (citation omitted). And in 2019, Insulet's CEO directed employees to "look at [EOFlow's] IP" to see "if they infringe" given that its product "looks just like [Insulet's] and their CEO is former COO of Insulet." Appx55152-55153. But for years Insulet did not further investigate or take legal action.

## II. Procedural History

In May 2023, Insulet's competitor, Medtronic, announced that it planned to acquire EOFlow. Appx343 ¶ 111. Months later, on August 3, 2023, Insulet filed suit and sought a preliminary injunction, alleging that EOFlow had infringed its patents and stolen its trade secrets. Op. 4. The district court granted a preliminary injunction, but this Court reversed—recognizing that the court had failed to address the significant statute-of-limitations issue with Insulet's trade secrets claim. *Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873, 880 (Fed. Cir. 2024).

On remand, the district court denied EOFlow's motion for summary judgment on statute-of-limitations grounds and the case proceeded to trial. At trial, Insulet asserted several overlapping trade secrets, all concerning the design and manufacture of the Omnipod. The jury returned a verdict for Insulet on four asserted trade secrets:

- The computer-aided design (CAD) files for the Omnipod;
- The design and manufacturing of the Omnipod's soft cannula (also contained in the first trade secret);
- The occlusion-detection algorithm (ODA) for the Omnipod; and
- The design history file (DHF) for the Omnipod, a "combination" trade secret incorporating all other trade

secrets.

Op. 4-5, 23-28. On January 3, 2025, on Insulet's motion, the court dismissed Insulet's patent claims. Op. 5.

EOFlow moved for JMOL and a new trial, again arguing that Insulet's claims were time-barred. Op. 6. The court denied those motions and entered a permanent injunction.

## III. The Panel Opinion

In a thorough opinion that engaged with the extensive record evidence, this Court reversed. First, the panel rejected Insulet's argument that its voluntary dismissal of its patent claims divested this Court of jurisdiction. Op. 7-9. The panel held that the dismissal of those claims in 2025 "functioned as a dismissal with prejudice" because, by that time, the patent claims were barred by the six-year statute of limitations. *Id.* at 7-8. The rule that a "dismissal is with prejudice if the dismissal altered the legal positions of the parties vis-à-vis the dismissed claim" clearly applied here—after all, "Insulet could not refile suit" for the infringement it alleged. *Id.* at 8-9 (citation and alterations omitted).

Next, the panel held that Insulet's trade secrets claims were time-barred under the DTSA's three-year statute of limitations, as Insulet

knew or should have known that its trade secrets had been misappropriated prior to August 3, 2020. The panel recognized that all four trade secrets closely related to one another (or overlapped entirely), such that Insulet had raised "a single claim of misappropriation" that could only accrue once. Op. 19. And applying the familiar access-plus-similarity framework to Insulet's misappropriation claim, the panel held that Insulet's claim accrued more than three years before this case was brought in 2023. *Id.* at 19-34. The panel explained that Insulet knew as early as 2018 that EOFlow had secured comprehensive access to Insulet's trade secrets, including by hiring the personnel that had developed the Omnipod, and possessed "detailed technical information" about the product. *Id.* at 19-22 (citation omitted). And as to similarity, the panel held that Insulet knew by 2018 that EOFlow had developed a product that, in Insulet's words, "cloned" the Omnipod. *Id.* at 22-34.[1]

Judge Prost dissented in part, agreeing that the Court had jurisdiction but disagreeing that Insulet's claims were time-barred.[2]

---

[1] Contrary to amici's arguments, the panel identified specific similarities as to each trade secret—not just a superficial "resemblance" between the products. Dkt. 76-2 at 9; *see* Op. 22-34.

[2] While the panel found it unnecessary to decide whether the DHF—which includes the other trade secrets—was a valid trade secret, Op. 27

# ARGUMENT

Insulet claims the panel erred in three respects and created three circuit splits. None of its arguments withstands scrutiny.

## I. The Panel's Unanimous Jurisdictional Ruling Does Not Warrant En Banc Review.

Insulet begins (at 10-13) by accusing the panel of creating a circuit split regarding this Court's jurisdiction over patent appeals. But despite labeling its criticism as one about "jurisdictional principles," Pet. 10, Insulet simply takes issue with the panel's case-specific resolution of a subsidiary question—whether Insulet's dismissal of a time-barred claim functioned as a dismissal *with prejudice*. The panel correctly held that it does under the circumstances of this case, and that determination provides no basis for further review.

1. This Court has appellate jurisdiction in "civil action[s]" that "relat[e] to patents." 28 U.S.C. § 1295(a)(1). As this Court explained more than two decades ago, that jurisdiction is lost if all patent claims are dismissed without prejudice—but not, as Insulet agrees, if dismissal is with prejudice. *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d

n.9, the dissent would have held that the DHF was "severely overbroad," Dissent 13.

1178, 1189-90 (Fed. Cir. 2004). That distinction "is functional, rather than semantic," and the operative question is whether the dismissed claim can be reasserted. *Id.* at 1190.

Every circuit to address the issue—including this one—agrees that the dismissal of time-barred claims is necessarily with prejudice: those claims, once dismissed, are gone for good. *Id.* at 1190; *see also Hilton Int'l Co. v. Union De Trabajadores De La Industria Gastronomica De Puerto Rico*, 833 F.2d 10, 11 (1st Cir. 1987). That holds true even where, as here, the plaintiff *invites* the dismissal through stipulation or a motion. *See Chamberlain Grp.,* 381 F.3d at 1190.[3]

The panel correctly applied those principles here. Insulet's 2023 complaint asserted patent claims based on June 2018 infringement. Op. 4. After obtaining a trial verdict—long after the six-year statute of limitations had run on the patent claims—Insulet moved for "amendment and voluntary dismissal" of those claims "without prejudice." Appx21408; *see* Op. 5, 7. And on January 3, 2025 the court

---

[3] Insulet argues (at 11-12) that *Hilton International Co. v. Union De Trabajadores De La Industria Gastronomica De Puerto Rico*, 833 F.2d 10 (1st Cir. 1987), should be confined to "involuntary" dismissals, but *Hilton* itself says the same "is clearly the rule if the dismissal is voluntary." *Id.* at 11.

granted Insulet's motion and dismissed the patent claims. Op. 5, 8. Although the dismissal was nominally "without prejudice," the patent claims had undisputedly expired. *Id.* at 8-9. This dismissal was therefore with prejudice, and jurisdiction remained.

2. None of Insulet's authorities hold otherwise—instead, they deal with different questions. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), held that an amended complaint can "wipe the jurisdictional slate clean." *Id.* at 34. But the issue here is dismissal, not amendment. And relabeling a voluntary-dismissal motion as one for "amendment and voluntary dismissal," as Insulet did, has no bearing on whether a dismissal "function[s]" as one with prejudice. *Chamberlain Grp.*, 381 F.3d at 1190. Insulet's citation (at 11) to this Court's "repeated[]" statements that dismissal "without prejudice" of patent claims "deprives this court of jurisdiction," *Krauser v. BioHorizons, Inc.*, 753 F.3d 1263, 1269 (Fed. Cir. 2014), fares no better: the panel held the dismissal here was *with* prejudice. Op. 9.

Insulet's imagined dissonance with the Fifth Circuit fails for the same reasons. *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447 (5th Cir. 2001), confirms only that this Court lacks jurisdiction

over pendent claims where "patent claims are dismissed without prejudice." *Id.* at 454. The court's reference to "the timing of the dismissal" is irrelevant—that statement rejected the argument that pendent jurisdiction remained if dismissal came "after a trial on the nonpatent claims." *Id.* But that was because, unlike here, "the patent claims were dismissed without prejudice, which is the determinative factor under Federal Circuit precedent." *Id.* The panel's decision and *Logan* are thus in harmony.

3. That leaves Insulet's suggestion that, because "[t]he chief and often the only virtue of a jurisdictional rule is clarity," the Court should invent a new jurisdictional test that applies *only* to patent claims time-barred by 35 U.S.C. § 286. Pet. 12-13 (citation omitted). But if Insulet means that Section 286 is not a *real* statute of limitations, the Supreme Court has held otherwise. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 336 (2017). And even if policy considerations could justify a *sui generis* jurisdictional rule for one statute of limitations, the "strange results and gamesmanship" Insulet warns of are hard to imagine: patent-holders would have to allege infringement, wait (perhaps for years) until the claims are time-barred,

then voluntarily dismiss, just to secure an appeal in this Court. Pet. 13. That gambit is unlikely to "burden[]" this Court with a deluge of cases. *Id.*

## II. The Panel's Determination that Insulet's Closely Related Trade Secrets Accrued Together Merits No Further Review.

Insulet next distorts the panel's decision (at 13-16) by contending it adopted a "sweeping rule" that starts the clock on "*all* of Insulet's trade secrets" once Insulet could suspect a "breach of confidence" by any single "ex-employee." Based on that mischaracterization of the panel's opinion, Insulet claims a conflict with the DTSA's text, a decision of the Sixth Circuit, and the party-presentation principle. Each point fails.

1. Insulet misreads the panel's ruling, which was not at all "sweeping." Pet. 14. The panel held that where, as here, nominally separate trade secrets were (1) "shared . . . during the same period," (2) "in connection with the same relationships," and (3) "concern related matter," their misappropriation can "constitute a single claim of misappropriation." Op. 17, 19 (citation omitted). Because those elements were met here, the panel concluded that one claim encompasses misappropriations of Insulet's trade secrets. That determination was

both sound and grounded in case-specific facts, without broader consequences for all trade secret cases.

2. The panel's conclusion was also consistent with the DTSA's text. Section 1836(d) says "a civil action" under the statute "may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). It then provides: "For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation." *Id.*

As multiple courts have recognized, the statute's final clause confirms that multiple instances of misappropriation can "relate to the same claim of misappropriation." Op. 17; *see, e.g.*, *Arrivia Inc. v. Rowley*, 2023 WL 7386384, at *5 (D. Ariz. Nov. 8, 2023); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1223 (E.D. Cal. 2018). And when more than one misappropriation is encompassed in the same claim, the claim "accru[es] at the time of the initial misappropriation." *Arrivia*, 2023 WL 7386384, at *6.

Insulet emphasizes that the DTSA links accrual to "the misappropriation with respect to which the action would relate," calling that language "claim-specific." Pet. 15 (citation and alterations omitted). Insulet then goes on to say that Section 1839(5) defines misappropriation to apply to "*a* trade secret." *Id.* (citation omitted). That misses the point. The panel did not hold that a claim accrued based on separate misappropriation, or that a "misappropriation" could apply to more than one trade secret. Rather, the panel held, as the DTSA requires, that more than one instance of misappropriation can comprise a single claim of misappropriation. Op. 19.

3. The panel's analysis also tracks this Court's and other circuits' approaches. In *Maatuk v. Emerson Electric, Inc.*, 781 F. App'x 1002 (Fed. Cir. 2019), this Court affirmed the dismissal of a misappropriation claim as time-barred based on the misappropriation of different trade secrets by the same party in the same confidential relationship years earlier. *Id.* at 1005. Like the panel opinion, *Maatuk* speaks in terms of a single "fractured relationship," recognizing that "the fabric of the relationship once rent is not torn anew with each added use or disclosure." *Id.* (citation omitted). The panel correctly applied that principle here by

holding that multiple instances of misappropriation comprised a single claim. Op. 17, 19.

Insulet claims (at 16) that the Sixth Circuit diverged from this approach in *B&P Littleford, LLC v. Prescott Machinery, LLC*, 2021 WL 3732313 (6th Cir. 2021). But as the panel explained, *B&P Littleford* is fully consistent with the result here. Op. 18. For one, the court in *B&P Littleford* recognized the same "controlling principle" the panel applied here: that determining when separate acts of misappropriation accrue together requires a "fact-specific inquiry" into multiple interrelated factors, with a focus on "whether the same relationship has been ruptured in the same way." *B&P Littleford*, 2021 WL 3732313, at *6.

To be sure, *B&P Littleford* characterized the inquiry as whether separate "trade secrets should be considered to be a single trade secret," rather than whether misappropriation of different trade secrets should be encompassed in the same claim for misappropriation. Op. 18; *see B&P Littleford*, 2021 WL 3732313, at *6. But that distinction does not matter here. Insulet itself claimed that "the entirety of [its] work on the Omnipod" could comprise a single trade secret. Blue Br. 40. And the only trade secret that Insulet claims was stolen later than the others is

the DHF trade secret, Pet. 14, which—as Insulet itself argued—*literally* consists of every other trade secret for which Insulet's misappropriation claim had already accrued, *see* Op. 5. So even under *B&P Littleford*, Insulet's misappropriation claim as to all trade secrets would be time-barred.

4. Finally, Insulet asserts that rehearing of the panel's accrual holding is warranted because the issue was "unbriefed." Pet. 13. But the party-presentation principle is not implicated here. The essence of the panel's accrual determination was that Insulet's misappropriation claim concerning the DHF and the ODA trade secrets accrued when the discovery standard was satisfied as to related misappropriation. And on that issue, the panel adopted EOFlow's position and rejected Insulet's.

Throughout this appeal, EOFlow argued that "the statute of limitations for *all* of Insulet's asserted trade secrets" accrued based on Insulet's notice of DiIanni's 2018 disclosures, quoting cases explaining that "[w]hen a plaintiff brings suit . . . for separate misappropriations of related trade secrets . . . the date of accrual is the date of the initial misappropriation." Blue Br. 31 (quoting *HiRel Connectors, Inc. v. United States*, 465 F. Supp. 2d 984, 988 (C.D. Cal. 2005)). And EOFlow also

argued that Insulet's claim concerning the DHF trade secret—the file "compil[ing]" all the others—accrued based on Insulet's earlier notice of the misappropriation of that trade secret's component parts. Blue Br. 30-31; Gray Br. 20. Although Insulet chose to give short shrift to these arguments, Red Br. 42 n.18, 51, the panel's adoption of EOFlow's argument does not violate the principle of party presentation.

## III. The Inevitable Disclosure Doctrine Is Irrelevant Here.

Finally, Insulet claims that the panel "create[ed] another split" by "reviv[ing]" the "inevitable disclosure" doctrine, which "the DTSA rejects." Pet. 16-20. The panel did no such thing; indeed, it neither mentioned nor applied this doctrine. What Insulet actually contests is not a legal principle, but a factbound determination—specifically, the panel's analysis of evidence about DiIanni. That is not an issue that warrants the full Court's review, and Insulet's attempt to recast it as a question of law is a distraction this Court should ignore.

1. Again, the relevant legal rules are not in dispute. Under the discovery rule for statutes of limitations, a claim is "discovered" when "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint." *City of Pontiac Gen. Emps.*

*Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011). And as the panel unanimously held (and as Insulet conceded at argument), a plaintiff can plead a trade secrets claim based on a defendant's access to the trade secret and development of a similar product—the access-plus-similarity framework. Op. 14; *see* Dissent 3.

Insulet accepts all this, but criticizes the panel for stating that "access" may include the "competitor's access to the plaintiff's former employee." Op. 33 (citation omitted); *see* Pet. 17. But Insulet reads this language far too broadly. When articulating the legal standard, the panel explicitly held that a trade secret claim accrues when a trade secret holder knows, or reasonably should know, of "the combination of the defendants' *access to the trade secret* and the similarity of the trade secret to the defendant's design." Op. 11 (emphasis added). Of course, sometimes access to a former employee *is* access to a trade secret, as when that employee, like DiIanni, is a "veritable repository of information on [plaintiff's] products and designs," and the employee has been "hired by [the defendant] to design directly competing products." *Id.* at 22 (citation omitted). But that is simply an application of settled law

to the specific facts here—not a new legal rule that warrants en banc review.

2. And the panel's ruling here creates no split. Insulet does not dispute that the panel opinion aligns with the Fifth Circuit's decision in *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358 (5th Cir. 2000), which held that knowledge that a former employee "like Mr. DiIanni" had gone to work for a competitor on a very similar product put the former employer on notice of access. Op. 21. Insulet instead claims (at 19) that *Oakwood Laboratories, Inc. v. Thanoo*, 999 F.3d 892 (3d Cir. 2021), "*disavows* the majority's approach," quoting a footnote stating that access alone is not sufficient to state a claim for misappropriation. Pet. 19-20 (quoting 999 F.3d at 912 n.19). But the panel did not hold otherwise: the majority—like the dissent and Insulet itself—simply concluded that access *plus similarity* is enough to state a claim.

3. That leaves Insulet's musings (at 17-19) about "inevitable disclosure." Insulet's convoluted argument draws from the panel's citation to *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.,* 285 F.3d 1353 (Fed. Cir. 2002). *Leggett* held that hiring an employee with comprehensive knowledge of a product to "design directly competing

products" sufficed as "circumstantial evidence" to satisfy the access prong of the access-plus-similarity framework. *Id.* at 1361. Insulet says that, because *Leggett* cited *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), it carried forward the "inevitable disclosure" doctrine, which "the DTSA rejects" and which the panel here "revive[d]." Pet. 17-18 (citing 18 U.S.C. § 1836(b)(3)(A)(i)(I)).

This argument finds no footing in the decision: the panel did not rely on *PepsiCo* and said nothing about inevitable disclosure. But if considered, the point is meritless. Before the DTSA, the inevitable disclosure doctrine concerned suits to "enjoin the 'actual or threatened misappropriation' of a trade secret." *PepsiCo*, 54 F.3d at 1267 (citation omitted). It allowed a plaintiff to "prove" a claim of threatened misappropriation by demonstrating that "[a] defendant's new employment w[ould] inevitably lead him to rely on the plaintiff's trade secrets," *id.* at 1269, resulting in an injunction barring the new employment, *id.* at 1263. In its "Remedies" subsection, the DTSA limits that relief: injunctions may now prevent "actual or threatened misappropriation," but not "prevent a person from entering into an employment relationship." 18 U.S.C. § 1836(b)(3)(A)(i)(I). The statute

also provides that, to the extent that an injunction places "conditions . . . on such employment," it must be "based on evidence of threatened misappropriation and not merely on the information the person knows." *Id.*

None of that is relevant here. The panel's misappropriation analysis did not concern remedies at all, let alone injunctions imposing limits on employment. Nor did *PepsiCo* address the standard for determining whether misappropriation has occurred—instead, it explained that some threats of future misappropriation are sufficiently concrete to justify prophylactic injunctive relief. 54 F.3d at 1267. And the panel did not hold that "the information" an employee "knows" alone would be sufficient to plead a claim. Instead, the panel held that, in combination, allegations that a former employee was "entrusted with details of every aspect of the research and development efforts" for a product and then "hired . . . to design [a] directly competing product[]," which was a "clone," are sufficient to survive a motion to dismiss. Op. 20-22 (citation omitted). That is far removed from the inevitable disclosure doctrine, which was no part of the panel decision here.

## CONCLUSION

The Court should deny the petition for rehearing en banc.

Dated: September 15, 2026

Respectfully submitted,

*/s/ Elizabeth B. Prelogar*
ELIZABETH B. PRELOGAR
COOLEY LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004
(202) 842-7800
eprelogar@cooley.com

LOWELL D. MEAD
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000
lmead@cooley.com

ELIZABETH M. FLANAGAN
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
(312) 881-6383
bflanagan@cooley.com

*Counsel for Defendants-Appellants EOFlow, Co., Ltd., EOFlow, Inc., and Jesse J. Kim*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation set forth in Federal Circuit Rule 40(e) because it contains 3,900 words, excluding the parts of the brief exempted by Federal Circuit Rule 32(b)(2).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Dated: September 15, 2026

*/s/ Elizabeth B. Prelogar*
Elizabeth B. Prelogar

## CERTIFICATE OF SERVICE

I hereby certify that, on September 15, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system.

I hereby certify that all parties will be electronically served via email and the Court's CM/ECF system.

Dated: September 15, 2026

*/s/ Elizabeth B. Prelogar*
Elizabeth B. Prelogar