**No. 25-1807**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**INSULET CORPORATION,**
*Plaintiff-Appellee,*

**v.**

**EOFLOW CO., LTD., EOFLOW, INC., AND JESSE J. KIM,**
*Defendants-Appellants.*

On Appeal from a Final Judgment of the United States District Court for the District of Massachusetts (No. 1:23-cv-11780-FDS) (Saylor, J.)

## MOTION TO STAY THE MANDATE

Matthew Ginther
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
(202) 346-4000

Alexandra D. Valenti
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351

Kevin P. Martin
Robert D. Carroll
Robert Frederickson III
Alexandra Lu
William E. Evans
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

October 21, 2026

*Counsel for Insulet Corporation*

## CERTIFICATE OF INTEREST

Counsel for Appellee certifies the following:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

   Insulet Corporation

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

   None/Not Applicable

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. Fed. Cir. R. 47.4(a)(3).

   None/Not Applicable

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   *Goodwin Procter LLP:* Scott T. Bluni, Timothy Keegan, James Breen, Arshjit Raince, Danit Maor, Gerard Cedrone, Jenny Zhang

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   Yes

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   None/Not Applicable

October 21, 2026 /s/ Kevin P. Martin

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1
BACKGROUND ........................................................................................3
I. The trade secrets. ........................................................................................3
II. Three years before filing suit, Insulet was only aware that former employees were working at EOFlow on a superficially similar product......4
III. Insulet files suit, and the jury finds Defendants engaged in willful misappropriation........................................................................................5
IV. The district court enters a permanent injunction to protect Insulet's trade secrets. ........................................................................................6
V. The Court partially stays the injunction and reverses the judgment. ............8
LEGAL STANDARD ........................................................................................11
ARGUMENT ........................................................................................12
VI. There is a reasonable prospect that the Supreme Court will grant certiorari, and a fair prospect that it will reverse this Court, on the jurisdictional and access-plus-similarity issues. ........................................................12
A. There is a reasonable prospect the Supreme Court will grant certiorari on the jurisdictional issue, and a fair prospect it will reverse.......................13
B. There is a reasonable prospect the Supreme Court will grant certiorari on the panel's accrual rule, and a fair prospect it will reverse......................16
VII. The irreparable-harm and balance-of-the-equities factors support a stay. ..19
CONCLUSION ........................................................................................22

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
977 F.3d 1379 (Fed. Cir. 2020) ....................11, 12, 16, 19

*CAE Integrated, L.L.C. v. Moov Techs., Inc.*,
44 F.4th 257 (5th Cir. 2022) ....................17, 19

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) ....................13

*Doe v. Miller*,
418 F.3d 950 (8th Cir. 2005) ....................12

*Gronholz v. Sears, Roebuck & Co.*,
836 F.2d 515 (Fed. Cir. 1987) ....................14

*Hilton Int'l Co. v. Union De Trabajadores De La Industria Gastronomica De Puerto Rico*,
833 F.2d 10 (1st Cir. 1987) ....................15

*Insulet Corp. v. EOFlow, Co. Ltd.*,
176 F.4th 1347 (Fed. Cir. 2026) ....................9, 14, 17, 18, 19

*Insulet Corp. v. EOFlow Co., Ltd.*,
779 F. Supp. 3d 124 (D. Mass. 2025) ....................7, 8, 20

*Krauser v. BioHorizons, Inc.*,
753 F.3d 1263 (Fed. Cir. 2014) ....................13

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
285 F.3d 1353 (Fed. Cir. 2002) ....................18

*Logan v. Burgers Ozark Country Cured Hams, Inc.*,
263 F.3d 447 (5th Cir. 2001) ....................14

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ....................6, 19

*Nilssen v. Motorola, Inc.*,
203 F.3d 782 (Fed. Cir. 2000) ....................13

*Oakwood Lab'ys LLC v. Thanoo*,
999 F.3d 892 (3d Cir. 2021) ........................................................................18

*PepsiCo, Inc. v. Redmond*,
54 F.3d 1262 (7th Cir. 1995) ..................................................................18, 19

*Revenue Mgmt. Sols., LLC v. Com. Bank*,
183 F.4th 618 (8th Cir. 2026) .................................................................20, 21

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ...................................................................22

*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22 (2025)..........................................................................13, 15, 16

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*,
200 F.3d 358 (5th Cir. 2000) ........................................................................19

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
70 F.4th 759 (4th Cir. 2023) .........................................................................21

*Trinseo Eur. GmbH v. Kellogg Brown & Root, L.L.C.*,
165 F.4th 399 (5th Cir. 2026) .................................................................18, 19

*Williams v. Chrans*,
50 F.3d 1358 (7th Cir. 1995) (per curiam) ....................................................12

**Statutes**

18 U.S.C. § 1836(b)(3)(A)(i)(I) ........................................................................17

18 U.S.C. § 1836(d) ...................................................................................6, 17

28 U.S.C. § 1295(a)(1)...................................................................................13

**Rules**

Federal Circuit Rule 41 ..................................................................................11

Federal Rule of Appellate Procedure 41(b) ..........................................................1

Federal Rule of Appellate Procedure 41(d)(1) ....................................................11

Supreme Court Rule 10(a) .........................................................................13, 17

Supreme Court Rule 10(c) ........................................................................17

**Legislative Materials**

S. Rep. No. 114-220 (2016) ..............................................................17, 19

Pursuant to Federal Rule of Appellate Procedure 41, Plaintiff-Appellee Insulet respectfully moves the Court to stay issuance of the mandate pending the disposition of a petition for a writ of certiorari seeking review of the Court's decision in this appeal.

The mandate is currently scheduled to issue on October 26, 2026. *See* Fed. R. App. P. 41(b). Ample grounds to support the Court's stay of the mandate under Rule 41(d) are set forth below. Counsel for Defendants have informed counsel for Insulet that Defendants oppose the motion and intend to file a response.

**INTRODUCTION**

This is a trade secrets case. A jury found that Defendant-Appellant EOFlow misappropriated Insulet's key trade secrets for its most important product. This Court, by a 2-1 vote, reversed only because it held that Insulet waited a few months too long to sue. The en banc court denied Insulet's petition for rehearing on October 19, 2026. Insulet intends to seek further review by the Supreme Court. The question is whether the mandate should issue in the meantime, which would have the practical effect of vacating a permanent injunction that has been in place throughout this appeal.

A stay of the mandate is warranted under Rule 41(d) pending Insulet's filing of a cert petition, because the cert petition will present two substantial questions and there is good cause for a stay. There is a reasonable probability that the Supreme

Court will vote to review the decision in this case. First, the decision conflicts with Supreme Court and regional circuit precedent concerning this Court's jurisdiction over cases in which all patent claims have been voluntarily dismissed without prejudice. There is at least a fair prospect the Supreme Court will agree with Insulet that the panel opinion improperly expands this Court's jurisdiction over appeals involving no question arising under federal patent law under such circumstances. The decision also is a strong candidate for Supreme Court review because it presents a square split of authority over the accrual standards for claims under the Defend Trade Secrets Act, and there is a fair prospect the Supreme Court will agree with Insulet that this Court's approach is wrong.

There also is good cause for a stay. Because this case concerns trade secrets, there is a risk that if the mandate issues and the permanent injunction is lifted, EOFlow could freely disseminate the trade secrets (either itself or to an acquiring entity), irreparably destroying the value the information has by dint of its secrecy. At the same time, there is no material risk to EOFlow from withholding the mandate and leaving the permanent injunction in place while Insulet seeks Supreme Court review. The injunction already contains reasonable exceptions to protect EOFlow's and the public's legitimate interests. EOFlow could have renewed its earlier motion to have the injunction entirely stayed following the panel decision in May, but did not—it sought only a stay from certain aspects of the injunction, which Insulet did

not oppose. And there is no indication that EOFlow is about to go to market in the United States. The important point is to prevent EOFlow from potentially disclosing the trade secrets to third parties even while the Supreme Court proceedings are pending.

For these reasons, the Court should stay issuance of the mandate.

## BACKGROUND

### I. The trade secrets.

Insulet spent years and hundreds of millions of dollars developing the Omnipod, the world's first disposable, tubeless insulin patch-pump. Appx20445-20446; Appx21149-21150. The trade secrets at issue in this case formed the heart of that work. EOFlow, a South Korean company, secretly stole these trade secrets after it tried and failed to develop its own patch-pump. Appx20669-20670; Appx20675; Appx20585(123:5-11).

Discovery, including the forensic recreation of databases that Defendants had attempted to delete (drawing a spoliation finding), revealed evidence of misappropriation that was, according to the district court, "overwhelming." Appx21173; Appx21385(148:6-18). The evidence showed that Defendants clearly understood they were engaging in misconduct, as EOFlow employees routinely shared and copied documents plainly marked "Insulet Confidential Information." Appx21145-21146(69:25-73:8); Appx20884-20886(140:25-145:5); Appx41615-

41620. One of Defendants' employees wrote in a chat message that he was "stealing from insulets SWFMEA," eliciting a "lol" response from a colleague. Appx42088-42090. EOFlow's CEO, Defendant Jesse Kim, using a winky-face emoji, made light of how the EOPatch 2 constituted "piracy."[1] Defendants also showcased trade-secret documents to Insulet's largest competitors—sometimes even failing to remove Insulet logos from the documents.[2]

## II. Three years before filing suit, Insulet was only aware that former employees were working at EOFlow on a superficially similar product.

None of that evidence was available to Insulet until after it sued. Among other things, EOFlow's device was not on sale anywhere in the world until 2021, well after the critical date. Appx20709-20710(66:4-67:19).

For years before EOFlow's launch, Insulet performed competitive diligence on EOFlow by examining publicly available materials, as Insulet did with other competitors. Appx20582-20588; Appx43523-43524. But everything Insulet learned through that diligence pointed away from misappropriation. For one thing,

[1] Appx41480-41481; Appx41484; Appx41489-41490; Appx20705-20708(62:3-65:19).

[2] Appx21145-21146(69:25-73:8); Appx43671-43672; Appx43673-43679; Appx43680-43700.

EOFlow's statements to Insulet[3] and public patent disclosures[4] suggested EOFlow was developing its device using wholly distinct technology. In reality, EOFlow was actively seeking to conceal its theft by "keep[ing] [Insulet] guessing" and "avoiding mechanical features discussions" in public. Appx41453; Appx41603; Appx41480-41484. In addition, the prototypes EOFlow displayed at trade shows were non-functional shells—at trial, EOFlow's president admitted that nothing about the prototypes would cause an observer even to *suspect* misappropriation of several of the relevant trade secrets. Appx20779-20782; Appx20877.

EOFlow began selling the EOPatch 2 in Europe in late 2022; soon after, Insulet obtained a functional EOPatch 2 and performed a teardown, which revealed non-public "elements of the Omnipod design" that could not otherwise be discerned. Appx20588(133:23-135:12), Appx20523-20524, Appx20541.

## III. Insulet files suit, and the jury finds Defendants engaged in willful misappropriation.

On August 3, 2023, Insulet sued EOFlow, raising DTSA and patent claims. The patent claims were stayed in October 2023, Appx949, and never adjudicated.

EOFlow contended that Insulet's DTSA claims were time-barred. The applicable statute of limitations expires "3 years after the date on which the

[3] Appx21274-21275; Appx21230-21232.

[4] Appx20585(122:15-21); Appx43523-43524; Appx21041(102:21-104:15); Appx21275(43:14-44:7).

misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). EOFlow's position was that the clock starts on "inquiry notice," when misappropriation is first *suspected*. *E.g.*, Appx12511; Appx5199. Insulet countered that, under *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), inquiry notice is the wrong test for a statute of limitations keyed to "*discover[y]*." Appx8071-8079; Appx12680-12686; Appx16356. The district court agreed with Insulet on the accrual standard, but held there were material disputes of fact. Appx21392. A five-week jury trial followed.

At the end of that trial, the jury found that EOFlow had misappropriated four of Insulet's trade secrets, largely willfully and maliciously, and rejected EOFlow's limitations defense as to each. Appx20178-20187. After the verdict, Insulet moved, without opposition, to amend its complaint under Rule 15 to dismiss its patent claims, which had been stayed throughout the case. Without any opposition from Defendants, the district court dismissed the patent claims "WITHOUT PREJUDICE." Appx21408; Appx21412; Appx106.

## IV. The district court enters a permanent injunction to protect Insulet's trade secrets.

After trial, the parties engaged in multiple rounds of briefing on Insulet's request for a permanent injunction. *See* Dkt. Nos. 885-890, 931-933, 938; Appx21693-21734.

After careful consideration, the district court issued a written opinion granting Insulet's motion for a permanent injunction. *See Insulet Corp. v. EOFlow Co., Ltd.*, 779 F. Supp. 3d 124, 132-36 (D. Mass. 2025). The court found it was "clear that plaintiff would face irreparable harm if defendants were permitted to make unfettered use of its trade secrets." *Id*. at 133. "In the absence of an injunction," the court explained, "defendants could freely sell or distribute products incorporating plaintiff's trade secrets, entirely undermining the value of its proprietary information." *Id*. The court emphasized that "[s]uch a prospect is not, as defendants suggest, theoretical," because "EOFlow already attempted to profit from the stolen trade secrets when it agreed to terms of a sale with one of plaintiff's largest competitors, Medtronic, before this lawsuit began." *Id*. The court explained that "[w]ithout an injunction, defendants could once again profit from the sale of the trade secrets—secrets that plaintiff spent several years and millions of dollars to develop—enabling others to avoid significant upfront costs and compete with plaintiff." *Id*. Further, "defendants' brazen actions over a substantial period of time, as recognized by the jury's finding that EOFlow and Kim willfully and maliciously misappropriated certain trade secrets, only heightens the risk of future harm." *Id*. (internal quotation and citation omitted).

The district court found that the other equitable factors also supported an injunction. Money damages would not be available to remedy any harm to Insulet,

particularly because "it [is] highly unlikely that defendants have the financial wherewithal to satisfy the jury award, or even to come close to doing so." *Id.* As to the equities, whereas "nothing prohibits defendants from developing another product through legal means," "requiring plaintiff to compete with a product built upon its own stolen property imposes a substantial burden." *Id.* And "[t]he public interest in providing robust protection of trade secrets strongly weighs in favor of an injunction." *Id.* at 134.

The permanent injunction the district court granted prohibits Defendants from, among other things, using, manufacturing, selling, distributing, or seeking regulatory approval for any products that were designed, developed, or manufactured, in whole or in part, using or relying on Insulet's trade secrets, and from disclosing the trade secrets to any third parties. *See* Appx110-118. At the same time, the court recognized that "current EOPatch 2 users" could face "potential short-term hardship" from an injunction. *Insulet*, 779 F. Supp. 3d at 134. The court therefore granted a six-month stay for sales of EOPatch 2 to existing patients in EOFlow's two main markets, Europe and Korea. Appx112-113.

## V. The Court partially stays the injunction and reverses the judgment.

1. EOFlow appealed to this Court and moved for a stay of the injunction; Insulet opposed and moved to transfer this case to the First Circuit under 28 U.S.C. § 1631, on the basis that its patent claims had been dismissed without prejudice. *See*

Dkt. Nos. 5, 9, 11-13, 17. Notably, in moving to stay the injunction, EOFlow assured this Court that "EOFlow has already agreed, irrespective of a stay, not to disclose *any* asserted trade secrets or expand into *any* new markets." Dkt. No. 17-1 at 8.

This Court "grant[ed] the motion for a stay only to the extent that the district court's temporary stay (set to end October 24, 2025), regarding EOFlow patients in the Republic of Korea and the European Union, is extended (1) to include patients residing in the European Union who were using the relevant product(s) as of April 24, 2025, and (2) until further notice of the court." Dkt. No. 18 at 2. It otherwise left the injunction in place. The Court "den[ied] the motion to transfer in favor of having the parties address the jurisdictional issues in their merits briefs." Dkt. No. 18 at 2.

2. After briefing and argument, the panel reversed the decision below over Judge Prost's dissent and ordered judgment for EOFlow.

The panel held that the dismissal of Insulet's patent claims without prejudice did not deprive this Court of jurisdiction. The panel reasoned that if Insulet re-asserted the patent claims in the future, the damages period available to it would have shifted forward in time, leaving earlier-in-time damages on the cutting room floor. On that basis, the panel concluded the case arises under patent law. *Insulet Corp. v. EOFlow, Co. Ltd.*, 176 F.4th 1347, 1352-53 (Fed. Cir. 2026).

On the merits, a majority of the panel concluded that "the statute of limitations expired before Insulet filed its complaint." *Id*. at 1354. The majority reasoned that the clock starts for a DTSA claim based on a showing of "access plus similarity": evidence Insulet knew that its former employee Mr. DiIanni had knowledge of the trade secrets, that he had joined EOFlow, and that EOFlow was working on a product with "general similarities" to the Omnipod. *Id*. at 1360 (capitalization altered); *see also id.* at 1355, 1359. In dissent, Judge Prost emphasized that the majority's "access-plus-similarity framework is not supported by the case law and induces a premature, and unfortunate, rush to the courthouse based on mere suspicion," risking "absurd results." *Id*. at 1366-69.

3. Following the panel opinion, Defendants moved—without opposition by Insulet—to further modify the partial stay of the permanent injunction. *See* Dkt. No. 67. In particular, Defendants "request[ed] that the Court stay Paragraphs 6 and 7 of the permanent injunction"—which prohibit manufacture, sale, and related activities using the trade secrets, and prohibit possession of the trade secrets except as permitted by existing carve-outs—"pending further order of the Court, with respect to conduct prohibited by those paragraphs occurring in the Republic of Korea, the European Union, Qatar, Saudi Arabia, or the United Arab Emirates." Dkt. No. 67-1 at 2. Defendants represented that the stay would "minimize the harm—including to EOFlow patients and EOFlow itself—that the injunction has imposed."

Dkt. No. 67-1 at 2. The Court granted the requested modification to the stay. *See* Dkt. No. 68.

As a result, even before issuance of the mandate, Defendants have gained the ability to sell the EOPatch 2 in a variety of markets. Insulet is not opposing that. What Defendants cannot do before the mandate issues is, *inter alia*, freely disseminate Insulet's trade secrets to third parties.

Insulet petitioned for rehearing en banc. Dkt. No. 69. After inviting a response from EOFlow, Dkt. Nos. 71, 91, the Court denied Insulet's petition on October 19, 2026, Dkt. No. 94.

## LEGAL STANDARD

Under Federal Rule of Appellate Procedure 41, "[a] party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court." Fed. R. App. P. 41(d)(1). The mandate can be stayed where "the petition would present a substantial question and … there is good cause for a stay." *Id.*; *see* Fed. Cir. R. 41.

This Court requires that a movant show "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 977 F.3d 1379, 1380 (Fed. Cir. 2020) (internal

quotation and citation omitted). Additionally, this Court "will balance the equities and weigh the relative harms to the applicant and to the respondent." *Id*. (internal quotation and citation omitted).

## ARGUMENT

### VI. There is a reasonable prospect that the Supreme Court will grant certiorari, and a fair prospect that it will reverse this Court, on the jurisdictional and access-plus-similarity issues.

In this case there is both "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari" and "(2) a fair prospect that a majority of the Court will vote to reverse the judgment below." *Id*. On the first factor, the "reasonable probability" standard does not require showing a grant of certiorari is "more likely than not"; "something less" is sufficient, so long as the chances of certiorari are reasonable. *Doe v. Miller*, 418 F.3d 950, 952 (8th Cir. 2005). With respect to the second factor, the Court must "dispassionately assess the merits of the case ... and determine, as best [it] can, how the Justices will assess the judgment that [it] has rendered." *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (per curiam).

Here, two issues are sufficiently likely to secure review and reversal from the Supreme Court: this Court's jurisdictional holding and its articulation of the accrual standard for a DTSA claim.

A. **There is a reasonable prospect the Supreme Court will grant certiorari on the jurisdictional issue, and a fair prospect it will reverse.**

The panel's jurisdictional holding is contrary to Supreme Court precedent on arising-under jurisdiction, and it conflicts with a decision from the Fifth Circuit construing 28 U.S.C. § 1295(a)(1). The issue therefore merits review and resolution by the Supreme Court. *See* Sup. Ct. R. 10(a).

The significance of the panel's jurisdictional holding goes far beyond this case. The Supreme Court has long held that both § 1295(a)(1) (governing this Court's jurisdiction over patent cases) and § 1331 (governing general federal-question jurisdiction) use the same "arising under" test. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807-08 (1988). And until the panel's holding, the rule for this common arising-under standard was established and straightforward.

Under that standard, amending a complaint to drop the patent (or federal) claims without prejudice "wipe[s] the jurisdictional slate clean." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 34 (2025). And when that happens, the case no longer "arises under" patent (or federal) law. *Id.* at 25-26; *accord Nilssen v. Motorola, Inc.*, 203 F.3d 782, 784 (Fed. Cir. 2000). This Court's prior precedent had "repeatedly held" that an amendment dropping all patent claims without prejudice "deprives this court of jurisdiction over the case," *Krauser v. BioHorizons, Inc.*, 753 F.3d 1263, 1269 (Fed. Cir. 2014), because at that point the "suit does not 'arise under'

the patent laws," *Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 518 (Fed. Cir. 1987).

Regional-circuit precedent holds the same. The Fifth Circuit has concluded that this Court "lacks jurisdiction over non-patent claims where patent claims are dismissed without prejudice." *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 454 (5th Cir. 2001). The court rejected an argument that the jurisdictional analysis turns on "the timing of the dismissal"—the fact that the dismissal came after trial on other claims made no difference. *Id.* Instead, the Fifth Circuit concluded without qualification that where "patent claims are no longer present, and patent law issues do not permeate the other claims that were tried," there is no reason for *this* Court to exercise jurisdiction. *Id.* at 454-55.

The Court's decision in this case departs from that settled consensus. Contrary to the Fifth Circuit's approach, the panel's logic makes "the timing of the dismissal" the dispositive factor for jurisdiction. *Logan*, 263 F.3d at 454. Under that logic, even though Insulet voluntarily (and without objection) amended its complaint to dismiss its patent claims before they were adjudicated, leaving all patent-law issues unreviewable by this Court, the dismissal was nonetheless deemed effectively "with prejudice." *Insulet*, 176 F.4th at 1353. The reason, according to the panel, is that one of Insulet's withdrawn patent claims would likely be subject to a valid statute-of-limitations defense if it ever were refiled, under the Patent Act's six-year look

back for damages—something that is true *whenever* a patent infringement claim is voluntarily dismissed without prejudice. *Id.* As support for that reasoning, the panel pointed to a non-jurisdictional decision holding that when a district court *imposes* a "punitive" and *involuntary* dismissal of a claim, the dismissal "is, in fact, with prejudice" if the dismissed claim were likely to face a valid time bar upon reassertion. *Hilton Int'l Co. v. Union De Trabajadores De La Industria Gastronomica De Puerto Rico*, 833 F.2d 10, 10-11 (1st Cir. 1987).

That reasoning is irreconcilable with the Supreme Court's decision in *Royal Canin*. As *Royal Canin* explains, the difference between a voluntary dismissal by amendment and involuntary dismissal by a court has jurisdictional significance for the arising-under test. "When federal claims are dismissed by the district court, as in § 1367(c)(3), an appellate court may yet revive them; but that cannot happen when the plaintiff has excised them through a proper amendment." *Royal Canin*, 604 U.S. at 33. So too here. Had the patent claims been involuntarily dismissed by the district court *over Insulet's objection*, that decision with respect to a patent claim would have been subject to review on appeal by Insulet to this Court. But that "cannot happen" here, because Insulet itself, without any opposition from Defendants, *voluntarily* "excised" the patent claims without objection. *Id.* As a result, there was no contested decision concerning the patent claims that any party might have asked this Court to review, and thus no basis for this Court's jurisdiction.

Defendants' previous attempts to minimize this clear conflict in authority lack merit. They have tried to distinguish *Royal Canin* on the basis that "the issue here is dismissal, not amendment." Dkt. No. 91 at 9. That distinction does not hold up—the mechanism by which Insulet's patent claims were dismissed was a voluntary amendment to the complaint under Rule 15. *See* Appx21408, 21412. And *Royal Canin* is unequivocal about the effect of such an amendment: it "wipe[s] the jurisdictional slate clean." 604 U.S. at 34. Whether by amendment or dismissal, the practical effect was the same. Because the claims were voluntarily removed from the case by Insulet, it eliminated any possibility that this Court might be asked to address a patent claim.

Given this Court's departure from both Supreme Court and regional-circuit precedent on arising-under jurisdiction, there is a "reasonable probability" the Supreme Court will grant certiorari. *Am. Axle & Mfg.*, 977 F.3d at 1380. And in light of the conflict between the panel's reasoning and the logic of *Royal Canin*, there is a "fair prospect" the Court will reverse after granting review. *Id.*

B. **There is a reasonable prospect the Supreme Court will grant certiorari on the panel's accrual rule, and a fair prospect it will reverse.**

The panel's accrual holding rests on two out-of-circuit, pre-DTSA decisions. One embodies an "inevitable-disclosure" inference Congress rejected in the DTSA, and the other applies Texas law. The holding conflicts with the Supreme Court's

construction of federal discovery rules and with decisions of the Fifth and Third Circuits. The issue therefore merits review. *See* Sup. Ct. R. 10(a), (c).

Like the jurisdictional holding, the significance of the accrual holding is far-reaching and warrants Supreme Court intervention. When a DTSA claim accrues is a question of federal law that arises whenever a knowledgeable employee moves to a competitor, a routine event in every technology-driven industry. Until the panel's decision, the governing federal principles were settled. The DTSA starts limitations upon "discover[y]" of "the misappropriation." 18 U.S.C. § 1836(d). Under federal law, limitations periods cannot begin "*before* 'discovery' can take place," and facts that would prompt a diligent plaintiff "to investigate further" are "not necessarily" discovery of the violation. *Merck & Co. v. Reynolds*, 559 U.S. 633, 651 (2010) (emphasis in original). And because misappropriation typically occurs out of view, a plaintiff often can discover it only through circumstantial evidence. *See Insulet*, 176 F.4th at 1354. Aware that the States were divided over whether an employee's knowledge alone could provide evidence of misappropriation, Congress resolved the question for the DTSA: relief must be "based on evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(i)(I); *see* S. Rep. No. 114-220, at 8 & n.16 (2016).

Other circuits apply this rule consistently. In *CAE Integrated, L.L.C. v. Moov Techs., Inc.,* the Fifth Circuit held that a former employee's knowledge, "absent other

evidence, is insufficient to support a finding that he misappropriated trade secrets." 44 F.4th 257, 263 (5th Cir. 2022). The Fifth Circuit also has held that a former employee's competitive work does not itself trigger a duty to investigate. *Trinseo Eur. GmbH v. Kellogg Brown & Root, L.L.C.*, 165 F.4th 399, 419 (5th Cir. 2026). The Third Circuit, for its part, has held that access through a former employee to a competitor developing a similar product, "[w]ithout more," leaves misappropriation as non-actionable speculation. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 912 n.19 (3d Cir. 2021).

The panel's reasoning here is inconsistent with the reasoning of those other courts. The panel held "the competitor's access to the plaintiff's former employee" *was* sufficient. *Insulet*, 176 F.4th at 1365 (internal quotations omitted). It found that element satisfied because DiIanni, the former Insulet employee, was a "veritable repository" of Omnipod information. *Id*. But before the critical date, Insulet had no actual *evidence* that DiIanni took or disclosed anything to EOFlow—and DiIanni had certified in writing that he had not retained any Insulet confidential information, *see* Appx20618-20619(100:13-102:1), Dkt. No. 696-4.

To make that leap, the panel rested on *Leggett & Platt, Inc. v. Hickory Springs Manufacturing Co.*, 285 F.3d 1353, 1361 (Fed. Cir. 2002), a pre-DTSA case treating the hiring of a knowledgeable employee as evidence of misappropriation. *Leggett*, in turn, relied on *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), the leading

inevitable-disclosure decision. But *PepsiCo* is the very decision Congress identified when it required evidence beyond "the information the person knows." S. Rep. No. 114-220, at 8 & n.16 (2016).

That leaves *Seatrax Inc. v. Sonbeck Int'l, Inc.*, the decision both the panel and Defendants lean on. 200 F.3d 358 (5th Cir. 2000). It predates the DTSA by sixteen years. It applied Texas law. And it asked only whether the plaintiff had notice of "possible misappropriation," *id*. at 365, the inquiry-notice standard that *Merck* forecloses. The Fifth Circuit has since applied the DTSA and come out the other way. *CAE*, 44 F.4th at 263; *Trinseo*, 165 F.4th at 419. The panel thus looked to a quarter-century-old Fifth Circuit decision applying Texas law while ignoring recent Fifth Circuit decisions applying DTSA that contravened the panel's holding.

This case is an ideal vehicle for review. The accrual question was dispositive, decided as a matter of law, and resolved over a dissent that squarely framed the error. *Insulet*, 176 F.4th at 1372 (Prost, J., dissenting). Given the panel's departure from *Merck* and from the Fifth and Third Circuits, there is a "reasonable probability" certiorari will be granted and a "fair prospect" the Court will reverse.

## VII. The irreparable-harm and balance-of-the-equities factors support a stay.

The "irreparable harm" and "balance [of] the equities" factors support a stay here. *Am. Axle & Mfg*, 977 F.3d at 1380.

Absent a stay, Insulet faces a real risk of irreparable harm. "[T]he fact that a single trade secret may be disclosed is enough to establish irreparable harm" because "once a trade secret is disclosed, its secrecy is lost forever." *Revenue Mgmt. Sols., LLC v. Com. Bank*, 183 F.4th 618, 625 (8th Cir. 2026) (internal quotation and citation omitted). Not even a favorable decision from the Supreme Court could undo that harm.

Notably, this Court reversed the decision below solely based on its statute-of-limitations analysis, without reaching the remaining merits of the jury's verdict. Thus, this Court's decision does not call into question the district court's findings on the equities supporting an injunction. And those findings were stark. *See* pp. 7-8, *supra*. After considering multiple rounds of briefing and a voluminous record from a weeks-long trial, the court concluded that it was "clear that [Insulet] would face irreparable harm," because "defendants could freely sell or distribute products incorporating plaintiff's trade secrets, entirely undermining the value of its proprietary information." *Insulet*, 779 F. Supp. 3d at 133.

As the district court also emphasized, the "prospect" of irreversible harm in this case "is not[] ... theoretical." *Id*. That is shown by "defendants' 'brazen actions over a substantial period of time,' as recognized by the jury's finding that [Defendants] EOFlow and Kim willfully and maliciously misappropriated the trade secrets." *Id*. "Indeed," the trial record established that "EOFlow already attempted

to profit from the stolen trade secrets when it agreed to terms of a sale with one of plaintiff's largest competitors, Medtronic, before the lawsuit began." *Id*. Thus, absent a stay, there is a serious risk Defendants will further disclose Insulet's core trade secrets to third parties and the general public. And because a trade secret derives its value in substantial part from "remaining secret," *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 772 (4th Cir. 2023), that dissemination threatens an injury that reversal of this Court's decision by the Supreme Court could not remedy. Simply put, if Defendants are given free rein to publicize and commercialize Insulet's trade secrets, Insulet cannot recover the secrecy or competitive advantage those trade secrets once provided. *See Revenue*, 183 F.4th at 625.

EOFlow faces no comparable harm. The injunction already incorporates reasonable exceptions designed to accommodate EOFlow's legitimate interests and those of the public. EOFlow can already sell its device in all markets in which it is approved for sale. And EOFlow could have renewed its earlier request to stay the injunction *in toto* after the panel's decision in May, but it declined to do so—even as it asked for a more limited stay, which Insulet did not oppose. EOFlow can have no legitimate interest in lifting the remaining provisions of the injunction, which prohibit disclosure or further use of Insulet's trade secrets. On appeal, EOFlow did not contest the jury's findings that Insulet's cannula design and manufacturing specifications, Insulet's occlusion detection algorithm (ODA), and Insulet's CAD

file for the Omnipod all qualified as trade secrets. Nor did it deny that EOFlow misappropriated those trade secrets—willfully and maliciously with respect to the ODA and CAD file. EOFlow can complain of no harm from continuing to be prohibited from disclosing or using trade secret information that it indisputably never should have had.

Thus, the balance of the equities is entirely one-sided. If the mandate is stayed and Defendants prevail before the Supreme Court, then at worst for Defendants they will have been temporarily prevented from exploiting the misappropriated trade secrets. That is not harm. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011). But if the mandate is issued and Insulet prevails at the Supreme Court, Insulet cannot recover the secrecy of its trade secrets. A stay would simply prevent those harms while the Supreme Court considers Insulet's petition.

## CONCLUSION

Insulet respectfully requests that the Court stay the mandate pending resolution of Insulet's forthcoming certiorari petition.

October 21, 2026

Respectfully submitted.

/s/ *Kevin P. Martin*

Kevin P. Martin
Robert D. Carroll
Robert Frederickson III
Alexandra Lu
William E. Evans
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Matthew Ginther
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
(202) 346-4000

Alexandra D. Valenti
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351

*Counsel for Insulet Corporation*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2). This filing contains 4,995 words.

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman, a proportionally spaced typeface.

October 21, 2026 /s/ *Kevin P. Martin*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system.

I further certify that all parties will be electronically served via email and by the CM/ECF system.

October 21, 2026 /s/ *Kevin P. Martin*